**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| STATE NATIONAL INSURANCE COMPANY,<br>    Plaintiff,<br>     v.<br><br>THE COUNTY OF CAMDEN and ASSISTANT COUNTY COUNSEL DONNA WHITESIDE,<br>    Defendants.<br><br>THE COUNTY OF CAMDEN,<br>    Counterclaimant and<br>    Third-Party Plaintiff,<br><br>     v.<br><br>STATE NATIONAL INSURANCE COMPANY,<br>    Counterclaim-Defendant<br><br>   and<br><br>NICHOLAS M. ANDERSON,<br>    Third-Party Defendant,<br><br>   and<br><br>SCIBAL ASSOCIATES, INC.,<br>    Third-Party Defendant and<br>    Third-Party Counterclaimant.<br><br>SCIBAL ASSOCIATES, INC.,<br>    Fourth-Party Plaintiff,<br><br>     v.<br>DONNA WHITESIDE and MEADOWBROOK INSURANCE GROUP,<br>    Fourth-Party Defendants.<br><br>THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA,<br>    Intervening Plaintiff,<br><br>     v.<br><br>THE COUNTY OF CAMDEN and SCIBAL ASSOCIATES,<br>    Defendants. | CIV. NO. 08-5128(NLH)(AMD)<br><br>**OPINION** |

**APPEARANCES:**

PETER E. MUELLER
HARWOOD LLOYD, LLC
130 MAIN STREET
HACKENSACK, NJ 07601

WALTER J. ANDREWS
MICHAEL S. LEVINE
ROCKLAN W. KING III
HUNTON & WILLIAMS LLP
1751 PINNACLE DRIVE
SUITE 1700
MCLEAN, VA 22102

    On behalf of State National Insurance Company and Meadowbrook
    Insurance Group

WILLIAM M. TAMBUSSI
JOSEPH T. CARNEY
WILLIAM F. COOK
BROWN & CONNERY, LLP
360 HADDON AVENUE
P.O. BOX 539
WESTMONT, NJ 08108

    On behalf of the County of Camden

ALAN J. BARATZ
JOSEPH T. DALY
WEINER LESNIAK
629 PARSIPPANY ROAD
POST OFFICE BOX 438
PARSIPPANY , NJ 07054-0438

    On behalf of Scibal Associates, Inc.

CATHERINE JEAN BICK
MATTHEW NICHOLAS FIOROVANTI
GIORDANO HALLERAN & CIESLA, PC
125 HALF MILE ROAD
PO BOX 190
MIDDLETOWN, NJ 07748

    On behalf of Donna Whiteside

JEFFREY MATTHEW BEYER
MARK D. SHERIDAN

```
DRINKER BIDDLE & REATH LLP
500 CAMPUS DRIVE
FLORHAM PARK, NJ 07932-1047
```

    On behalf of The Insurance Company of the State of Pennsylvania

**HILLMAN,** District Judge

This matter concerns the determination of which entity or person is liable to pay for a multi-million dollar state court jury verdict in favor of a plaintiff who sued the County of Camden, New Jersey for injuries he sustained when he drove off the road and into a guardrail owned and maintained by the County.  Presently before the Court are the motions of Assistant County Counsel Donna Whiteside and Meadowbrook Insurance Group to dismiss fourth-party plaintiff Scibal Associates, Inc.'s claims against them.  Also before the Court is Whiteside's motion to stay discovery.  For the reasons expressed below, Meadowbrook's and Whiteside's motions to dismiss will be granted, and Whiteside's motion to stay discovery will be denied.

## BACKGROUND

On December 23, 2004, Nicholas Anderson was driving on Raritan Avenue in Waterford, New Jersey when he drove off the road and hit a guardrail.  Anderson sustained serious injuries, including an amputated leg and nearly amputated arm.  On December 20, 2006, Anderson filed suit in New Jersey state court against the County of Camden (the "County"), which owned and maintained the road and guardrail.  Anderson claimed that the County's negligent

maintenance of the road and guardrail were the proximate cause of his injuries. The case went to trial, and on October 17, 2008, the jury returned a $31 million verdict against the County.[1]

On October 20, 2008, State National Insurance Company ("State National") filed a declaratory judgment action in this Court against the County, seeking a declaration that it does not owe coverage to the County for the Anderson lawsuit under an excess liability insurance contract. State National contends that the County's delay in notifying it of the lawsuit, its repeated representation that the case was within the County's $300,000 self-insured retention, its errors in investigating and defending the case, and its revaluation of the case four days into trial, breached the insurance contract's notice provision and the adequate investigation and defense condition to coverage. In a recently-filed amended complaint, State National also contends that Donna Whiteside, County counsel who handled the Anderson case, committed legal malpractice by not properly defending the County and State National's interests.[2]

---

[1] The $31 million award was adjusted by the state court trial judge twice--first on January 16, 2009 to approximately $16 million, and then in response to Anderson's motion for reconsideration, it was further adjusted to $19,374,424.30 on February 20, 2009. On or about June 12, 2009, the state court judge denied a motion for reconsideration filed by the County seeking a new trial based on newly discovered evidence.

[2] Although the subject of a now-withdrawn motion by Whiteside, there does not appear to be any dispute regarding State National's compliance with the New Jersey Tort Claims Act,

4

State National's declaratory judgment action has spawned numerous counterclaims, third-party and fourth-party complaints, and an intervening plaintiff complaint.[3]  Presently before the Court are the motions of Donna Whiteside, County counsel, and Meadowbrook Insurance Group, claims administrator for State National, to dismiss the fourth-party complaint filed against them by Scibal Associates, Inc. ("Scibal").  Scibal is the County's claims administrator.  Scibal filed suit against Whiteside and Meadowbrook based on its potential liability to the County.  In the County's third-party complaint, the County asserts claims against Scibal for breach of its duties as the County's claims administrator.  The County claims that pursuant to their Professional Services Agreement ("PSA"), Scibal agreed to perform services for the County, including reporting all claims to the County's excess carrier and reinsurers in accordance with those entities' reporting requirements and preparing and providing claim reports reasonably required by the excess insurance carriers.  The County claims that Scibal breached these duties by failing to

---

which requires notice of claims to public entities and employees prior to the filing of any lawsuit.  See N.J.S.A. 59:8-3 ("No action shall be brought against a public entity or public employee under this Act unless the claim upon which it is based shall have been presented in accordance with the procedures set forth in this chapter.").

[3]The case caption above delineates the various claims.

notify Meadowbrook that the Anderson lawsuit was filed.[4]  The County also claims that should it be found liable to State National on its claims against the County, Scibal is partially or fully responsible based on the principles of contribution and indemnification due to Scibal's breach of the PSA.

Based on the County's claims against Scibal, Scibal advances its claims against Whiteside and Meadowbrook.[5]  Scibal contends that Meadowbrook negligently failed to exercise the proper degree of care in administering the State National policy after Scibal notified it of the Anderson accident in June 2005, and that if Scibal is found liable to the County, Scibal's liability is either joint or secondary to Meadowbrook's liability.  Similarly, Scibal contends that Whiteside was negligent in her defense of the Anderson case as well as in her reporting duties to Scibal and Meadowbrook.  Scibal claims that if it is found liable to the County, its liability is either joint or secondary to Whiteside's

---

[4] The County claims that on June 20, 2006, Scibal was advised by Meadowbrook that Meadowbrook intended to close its file with respect to the Anderson matter, and that Scibal should notify Meadowbrook should suit be filed.  The County further claims that upon the filing of the lawsuit in the Anderson matter on December 20, 2006, the County advised Scibal of the existence of the lawsuit, and it was the County's reasonable understanding and belief that Scibal would notify Meadowbrook of the filing of the lawsuit.  For whatever reason, yet to be determined, Meadowbrook and/or State National was not made aware of the Anderson lawsuit until a year and a half later.  This delay is one basis of State National's claims against the County.

[5] Scibal also advances a counterclaim against the County.

liability.  Accordingly, Scibal demands indemnification and contribution from Meadowbrook and Whiteside.

Meadowbrook and Whiteside have moved to dismiss Scibal's claims against them.  Scibal has opposed both motions.

## DISCUSSION

**A.    Jurisdiction**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

**B.    Standard for Motion to Dismiss**

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim.  Bogosian v. Gulf Oil Corp., 562 F.2d 434, 446 (3d Cir. 1977).  However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis

7

for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1969 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the "Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element"). A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997). The defendant bears the burden of showing that no claim has been presented. Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005)

(citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

Finally, a court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. Southern Cross Overseas Agencies, Inc. v. Kwong Shipping Group Ltd., 181 F.3d 410, 426 (3d Cir. 1999). A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56. Fed. R. Civ. P. 12(b).

**C.   Analysis**

   1.   *Meadowbrooks' motion to dismiss Scibal's complaint*

Meadowbrook has advanced several reasons why Scibal's complaint should be dismissed against it. Primarily, Meadowbrook argues that because the County's claims against Scibal relate to Scibal's failure to comply with the PSA between Scibal and the County, and Meadowbrook cannot be held liable in any way for Scibal's alleged breach of the PSA, the principles of contribution

9

and indemnification are inapplicable, and therefore, Scibal's claims fail.

A claim of contribution requires the imposition of joint liability. The New Jersey Supreme Court explained, "It is well settled that the true test for joint tortfeasor contribution is joint liability and not joint, common or concurrent negligence. The test's core proposition may be stated succinctly: It is common liability at the time of the accrual of plaintiff's cause of action which is the sine qua non of defendant's contribution right." Cherry Hill Manor Associates v. Faugno, 861 A.2d 123, 128 (N.J. 2004) (internal citations and quotations omitted). It must be determined then whether Scibal and Meadowbrook are subject to common liability to the County at the time the County's cause of action accrued.

The County claims that Scibal breached the PSA when it notified Scibal of the lawsuit on December 20, 2006, and Scibal failed to inform Meadowbrook of the lawsuit and thereafter otherwise failed to fulfill its obligations under the PSA to investigate, report, and assist with regard to the Anderson litigation. Thus, ostensibly the County's claim against Scibal accrued on December 20, 2006.[6] The County has not advanced any

---

[6]The Court notes that it makes no legal finding with regard to the actual accrual of the County's claims against Scibal, because the pleadings do not make clear that the County discovered Scibal's alleged failure to report the Anderson

claims against Meadowbrook at this point. If it did, it appears based on the pleadings that any claim against Meadowbrook would not have accrued until Scibal notified Meadowbrook of the lawsuit. Indeed, Meadowbrook could not have acted with regard to the litigation until it was aware of the litigation. Thus, the alleged harm caused by Scibal to the County from December 20, 2006 onward was not also caused by Meadowbrook at the same time, and Scibal and Meadowbrook cannot be found to have common liability.

There are several other problems with Scibal's contribution claim. First, it appears that the County's claim against Scibal is for breach of the PSA contract. Only the parties to the contract can breach it, and Meadowbrook was not a party to the PSA. Correspondingly, the right of contribution only exists among joint tortfeasors, and without any allegations that Scibal acted negligently, Scibal cannot maintain a contribution claim.[7]

---

lawsuit on that date. The finding that the County's claim accrued on December 20, 2006 is made solely in the context of determining whether Scibal and Meadowbrook can be held to be joint tortfeasors. Although the right of contribution is inchoate until a judgment is entered against one tortfeasor, and therefore does not technically accrue for statute of limitations purposes until that time, McGlone v. Corbi, 279 A.2d 812, 817 (N.J. 1971) (stating that a defendant's right to contribution from a joint tortfeasor is an inchoate right which does not ripen into a cause of action until the plaintiff has recovered a judgment obtained against him); N.J.S.A. 2A:53A-3, the December 20, 2006 date serves as a baseline to determine when Scibal's alleged conduct caused harm to the County in comparison to when any alleged conduct by Meadowbrook caused harm to the County.

[7]In its opposition, Scibal argues that because the County's affirmative defenses to Scibal's counterclaims state that the

N.J.S.A. 2A:53A-2, -3; <u>Longport Ocean Plaza Condominium, Inc. v. Robert Cato & Associates, Inc.</u>, 2002 WL 2013925, *2 (E.D. Pa. 2002) (analyzing New Jersey law and stating that "[g]iven the rather straightforward language of the statute, it is not surprising that courts dismiss contribution claims when the party against whom the claim is asserted may not, as a matter of law, be held liable as a joint tortfeasor. . . .  As the term 'joint tortfeasors' and the language of the statute indicate, both the party against whom a claim for contribution is asserted as well as the party asserting the claim must be tortfeasors"); cf. <u>Dunn v. Praiss</u>, 656 A.2d 413 (N.J. 1995) (carving out exception in particular case where physician-provider who was guilty of medical malpractice sought contribution from his HMO on the basis of the HMO's independent breach of contractual duty to the patient, because the breach of contract alleged to have proximately caused a personal injury).

Second, even if the County's claim against Scibal sounded in tort, the County's claims against Scibal are completely independent of any conduct by Meadowbrook.  If it is ultimately found that the

---

"incidents and damages described in Scibal's third-party counterclaim were caused wholly or partly by the negligent or intentional acts of Scibal or other parties," the County's claims against Scibal sound in tort. (Scibal Br. at 1.)  The County's answers to Scibal's counterclaims are not incorporated in its Fourth-Party Complaint against Meadowbrook, and it also does not serve as a basis for the County's articulated claims against Scibal.  Thus, Scibal's reliance on the County's answer to support its contribution and indemnification claims is misplaced.  Additionally, even construing the County's claims against Scibal as sounding in tort, Scibal's claims fail, as explained herein.

12

County breached its obligations under the State National policy, the County can still maintain its claims against Scibal--namely, that (1) Scibal breached the PSA, and (2) it was Scibal's failure to perform properly under the PSA that caused the County's breach.[8] Further, even if it is ultimately found that the County did not breach the insurance contract, the County could continue to maintain its breach of contract claim against Scibal. Any claims that the County may have against Meadowbrook do not depend on or affect the resolution of its claims against Scibal.

Apparently recognizing these problems, Scibal tries to explain how it can have common liability with Meadowbrook. It argues, "If [1] the allegations against Scibal by the County sounding in both contract and tort are proven and Scibal is found liable to the County for a negligent breach of its obligations to the County regarding the Anderson litigation as alleged by the County, and further if [2] the allegations of Scibal against Meadowbrook alleging breach of its fiduciary duty of care and good faith toward its insured, the County, are proven and Meadowbrook is found liable for a tortious injury to the County, that being the alleged unisured loss for the damages assessed in the Anderson verdict[,] then Meadowbrook and Scibal would have a common liability."

---

[8]As stated above, the County has asserted contribution and indemnification claims against Scibal. In this Opinion, the Court does not speak to the viability of those claims, other than to note that the same legal analysis would apply.

(Scibal Br. at 15.)  This argument is untenable, primarily because Scibal has no standing to allege any claim the County may have against Meadowbrook for breach of its fiduciary duty and good faith.  Further, the County has not asserted such a claim against Meadowbrook.  Additionally, simply because Scibal and Meadowbrook may have separately committed harm against the County, that does not automatically transform them into common tortfeasors for joint liability purposes.  See Adler's Quality Bakery, Inc. v. Gaseteria, Inc., 159 A.2d 97, 108 (N.J. 1960) (explaining that in order to maintain a contribution claim, the injured party must have advanced a valid claim against two tortfeasors, and permitting "plaintiff in contribution" to recover from "defendant in contribution" "would have essentially the same effect as permitting the injured person to recover one-half his damages from both wrongdoers").

Scibal's claim for indemnification against Meadowbrook fails for similar reasons.  The venerable principle of indemnification is premised upon the following: "'A person who, without personal fault, has become subject to tort liability for the unauthorized and wrongful conduct of another, is entitled to indemnity from the other for expenditures properly made in the discharge of such liability.'"  Adler's Bakery, 159 A.2d at 110 (quoting Restatement, Restitution, § 96 (1937)).  In other words, the right of indemnity "is a right which enures to a person who, without active fault on his own part, has been compelled, by reason of some legal

14

obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable." Id. (citations omitted). "Indemnity amongst tortfeasors has generally been confined to those whose negligence 'is not morally culpable but is merely constructive, technical, imputed or vicarious,'" Id. (quoting Daily v. Somberg, 146 A.2d 676, 684 (N.J. 1958)).

Here, Scibal's claim for indemnification against Meadowbrook fails because (1) it has not been alleged by the County that Meadowbrook is a tortfeasor, (2) the County's claims against Scibal do not sound in tort, (3) even if the County's claims against Scibal did sound in tort, the County has claimed that Scibal is not "without personal fault," and (4) there are no claims that could be construed to cause Scibal to have a legal obligation for any of Meadowbrooks' wrongdoings.

It is clear that Scibal does not want to be the caboose on the liability train. By its fourth-party complaint against Meadowbrook, Scibal effectively is saying, "even if we made a mistake, Meadowbrook did, too." In order to properly plead contribution and indemnification claims against Meadowbrook, however, Scibal needs to say, "if we made a mistake, Meadowbrook caused us to" or "we jointly made a mistake at the same time causing the same injury to the County" or "if we are found liable for the County's damages, Meadowbrook has to pay because we were not at fault, but Meadowbrook is." Until Scibal can make those

15

statements, it does not have valid contribution or indemnification claims against Meadowbrook. Accordingly, Scibal's fourth-party complaint against Meadowbrook must be dismissed without prejudice.

### 2. *Whiteside's motion to dismiss Scibal's complaint*

Scibal also asserts contribution and indemnification claims against Donna Whiteside, the County's "in-house" attorney who handled the Anderson litigation. Scibal claims that if it is held liable to the County for its damages, Whiteside should bear all or part of Scibal's liability because of her negligence in handling the case. These claims fail for the same reasons as Scibal's claims against Meadowbrook.

As explained above, the County's claims against Scibal center around its alleged failure to inform Meadowbrook of the December 20, 2006 filing of the Anderson lawsuit, and then its failure to thereafter participate in the investigation of the matter, in violation of the PSA. Scibal's contribution claim fails against Whiteside because (1) the County has not asserted a tort claim against Whiteside,[9] and (2) Scibal and Whiteside are not joint tortfeasors because the alleged harm caused to the County by Scibal, even if considered to sound in tort, is distinct and independent of Whiteside's alleged legal malpractice. Scibal's indemnification claim fails against Whiteside because the County

---

[9]The Court makes no comment or finding on whether the County would be able to assert such a claim against Whiteside.

has claimed that Scibal is not "without personal fault," and there are no claims that could be construed to cause Scibal to have a legal obligation for any of Whiteside's alleged legal malpractice.[10]

It appears that the crux of Scibal's claims against Whiteside, although not specifically articulated, is that her failure to properly handle the case caused Scibal to fail to properly discharge its duties to the County under the PSA. This claim is the basis for Scibal's cross-claim against the County, and its affirmative defense to the County's claims against it. In this context, Whiteside is the County by virtue of her employment with the County. Whiteside's identity as the County, however, cannot be severed to treat her as a independent tortfeasor who caused harm to the County such that Scibal can claim joint liability for contribution purposes or vicarious liability for indemnification

---

[10] It does not appear that Scibal has advanced a direct claim of legal malpractice against Whiteside. To the extent that Scibal bases its claims on Whiteside's alleged malpractice to State National, which has asserted such a claim against Whiteside, Scibal has no standing to sue for the damages allegedly suffered by State National by Whiteside's alleged negligence. Even if Scibal's complaint can be construed as asserting a legal malpractice claim against Whiteside, it would fail for two reasons. First, there was no attorney-client relationship between Whiteside and Scibal that created a duty of care onto Whiteside. Second, even if Whiteside had a duty of care to Scibal, Scibal does not claim that her alleged negligence was the cause of Scibal's failure to report the Anderson lawsuit to Meadowbrook. See Albright v. Burns, 503 A.2d 386, 389 (N.J. Super. Ct. App. Div. 1986) (stating that the requisite elements of legal malpractice are: 1) the existence of an attorney-client relationship creating a duty of care upon the attorney; 2) the breach of such duty; and 3) proximate causation).

purposes.  Consequently, Scibal's fourth-party complaint against Whiteside must be dismissed without prejudice.

### 3. *Whiteside's motion to stay discovery*

In February 2009, Whiteside filed a motion to stay discovery as to her, based on the procedural posture of the case at that time--the NJTCA statutory waiting period prohibiting suit from being filed against her during that time had not yet expired; State National had not yet filed an amended complaint naming Whiteside as an additional defendant; and the only claim advanced against her, Scibal's fourth-party complaint, was the subject of her motion to dismiss.  Now, however, even though Scibal's complaint against her has been dismissed, and on July 13, 2009 she filed a motion to dismiss State National's claims against her, Whiteside remains an active defendant in this case.  Consequently, Whiteside's motion to stay discovery as to her will be denied, with the Court noting that following the resolution of her motion to dismiss State National's claims, her request to be relieved of discovery obligations as a party to this litigation will either be granted by virtue of being terminated as a party, or, if her motion is denied, there will be no basis for requesting the stay of discovery.

## CONCLUSION

For the reasons expressed above, Scibal's fourth-party

complaint must be dismissed.[11]  Whiteside's motion for stay of discovery is denied.  An appropriate Order will be entered.

Date: October 13, 2009                            s/ Noel L. Hillman

At Camden, New Jersey                        NOEL L. HILLMAN, U.S.D.J.

---

[11] Scibal states in its opposition briefs that if its complaint is dismissed, it should be afforded the opportunity to amend. Except in civil rights cases, however, a court is not obligated to afford a plaintiff the opportunity to amend his complaint, either *sua sponte* or following the dismissal of the complaint pursuant to a motion to dismiss. Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007). The Third Circuit has held that "a motion to dismiss is not a responsive pleading and that Rule 15(a), therefore, allows one amendment as a matter of right up to the point at which the district court grants the motion to dismiss and enters final judgment." Id. at 252 (citation omitted). Thus, instead of allowing a plaintiff leave to amend while determining whether to dismiss a complaint, "[a]fter judgment dismissing the complaint is entered, a party may seek to amend the complaint (and thereby disturb the judgment) only through Federal Rules of Civil Procedure 59(e) and 60(b)." Id.  An amendment may only be permitted in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment. Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).