**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| STATE NATIONAL INSURANCE COMPANY,<br>    Plaintiff,<br>     v.<br><br>THE COUNTY OF CAMDEN and ASSISTANT COUNTY COUNSEL DONNA WHITESIDE,<br>    Defendants.<br><br>THE COUNTY OF CAMDEN,<br>    Counterclaimant and<br>    Third-Party Plaintiff,<br><br>    v.<br><br>STATE NATIONAL INSURANCE COMPANY,<br>    Counterclaim-Defendant<br><br>   and<br><br>NICHOLAS M. ANDERSON,<br>    Third-Party Defendant,<br><br>   and<br><br>SCIBAL ASSOCIATES, INC.,<br>    Third-Party Defendant and<br>    Third-Party Counterclaimant.<br><br>SCIBAL ASSOCIATES, INC.,<br>    Fourth-Party Plaintiff,<br><br>    v.<br>DONNA WHITESIDE and MEADOWBROOK INSURANCE GROUP,<br>    Fourth-Party Defendants.<br><br>THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA,<br>    Intervening Plaintiff,<br><br>    v.<br><br>THE COUNTY OF CAMDEN and SCIBAL ASSOCIATES,<br>    Defendants. | CIV. NO. 08-5128(NLH)(AMD)<br><br>**OPINION** |

**APPEARANCES:**

PETER E. MUELLER
HARWOOD LLOYD, LLC
130 MAIN STREET
HACKENSACK, NJ 07601

WALTER J. ANDREWS
MICHAEL S. LEVINE
ROCKLAN W. KING III
HUNTON & WILLIAMS LLP
1751 PINNACLE DRIVE
SUITE 1700
MCLEAN, VA 22102

>     On behalf of State National Insurance Company and Meadowbrook
>     Insurance Group

WILLIAM M. TAMBUSSI
JOSEPH T. CARNEY
WILLIAM F. COOK
BROWN & CONNERY, LLP
360 HADDON AVENUE
P.O. BOX 539
WESTMONT, NJ 08108

>     On behalf of the County of Camden

ALAN J. BARATZ
JOSEPH T. DALY
WEINER LESNIAK
629 PARSIPPANY ROAD
POST OFFICE BOX 438
PARSIPPANY , NJ 07054-0438

>     On behalf of Scibal Associates, Inc.

CATHERINE JEAN BICK
MATTHEW NICHOLAS FIOROVANTI
GIORDANO HALLERAN & CIESLA, PC
125 HALF MILE ROAD
PO BOX 190
MIDDLETOWN, NJ 07748

>     On behalf of Donna Whiteside

JEFFREY MATTHEW BEYER
MARK D. SHERIDAN

```
DRINKER BIDDLE & REATH LLP
500 CAMPUS DRIVE
FLORHAM PARK, NJ 07932-1047
```

    On behalf of The Insurance Company of the State of Pennsylvania

**HILLMAN,** District Judge

    This case concerns the determination of which entity or person is liable to pay for a multi-million dollar state court jury verdict in favor of a plaintiff who sued the County of Camden, New Jersey for injuries he sustained when he drove off the road and into a guardrail owned and maintained by the County.  Presently before the Court is the motion of intervening plaintiff The Insurance Company of the State of Pennsylvania ("ICSOP") for partial summary judgment in its favor against Camden County.  For the reasons expressed below, ICSOP's motion will be denied without prejudice.

<b><u>BACKGROUND</u></b>

    The following background facts were contained in the Court's prior Opinion addressing several other motions, and will be restated here for reference.  On December 23, 2004, Nicholas Anderson was driving on Raritan Avenue in Waterford, New Jersey when he drove off the road and hit a guardrail.  Anderson sustained serious injuries, including an amputated leg and nearly amputated arm.  On December 20, 2006, Anderson filed suit in New Jersey state court against the County of Camden (the "County"), which owned and maintained the road and guardrail.  Anderson claimed that the

County's negligent maintenance of the road and guardrail were the proximate cause of his injuries. The case went to trial, and on October 17, 2008, the jury returned a $31 million verdict against the County.[1]

On October 20, 2008, State National Insurance Company ("State National") filed a declaratory judgment action in this Court against the County, seeking a declaration that it does not owe coverage to the County for the Anderson lawsuit under an excess liability insurance contract.[2] State National contends that the County's delay in notifying it of the lawsuit, its repeated representation that the case was within the County's $300,000 self-insured retention, its errors in investigating and defending the case, and its revaluation of the case four days into trial, breached the insurance contract's notice provision and the adequate investigation and defense condition to coverage. In its amended complaint, State National also contends that Donna Whiteside, County counsel who handled the Anderson case, committed legal malpractice by not properly defending the County and State

---

[1] The $31 million award was adjusted by the state court trial judge twice--first on January 16, 2009 to approximately $16 million, and then in response to Anderson's motion for reconsideration, it was further adjusted to $19,374,424.30 on February 20, 2009. On or about June 12, 2009, the state court judge denied a motion for reconsideration filed by the County seeking a new trial based on newly discovered evidence.

[2] As noted in more detail below, the County disputes State National's status as an excess insurer.

National's interests.

State National's declaratory judgment action has spawned numerous counterclaims, third-party and fourth-party complaints, and an intervening plaintiff complaint.[3] Currently before the Court is the motion of ICSOP for partial summary judgment against the County. ICSOP filed an intervening third-party complaint against State National, the County, Whiteside, and Scibal Associates.[4] With regard to the County, ICSOP provided an excess liability policy, effective July 1, 2004 through July 1, 2005, with limits of liability of $5 million for each occurrence and in the aggregate. According to ICSOP, the ICSOP policy was not to be implicated until the County's $300,000 self-insured retention and the $10 million first-level excess liability insurance policy limits provided by State National were met. In its third-party complaint, ICSOP seeks a declaration that the County breached the notice provision in the ICSOP insurance policy, and it therefore is not obligated to pay the $5 million policy limit. Specifically, ICSOP claims that the County's failure to notify ICSOP of the Anderson lawsuit until seven weeks after the jury verdict--three

---

[3] The case caption above delineates the various claims.

[4] In the Court's prior Opinion, the Court dismissed Scibal's fourth-party complaint against Whiteside and Meadowbrook Insurance Group, which served as the claims administrator for State National. Currently pending are the motions of Ms. Whiteside to dismiss ICSOP's and State National's claims against her.

5

years after the filing of the lawsuit and four years after the accident--violates the policy's requirement to notify ICSOP "as soon as practicable of any accident or occurrence which may result in any claim or suit" under the policy.  Because the County breached the notice requirement, ICSOP contends that it suffered appreciable prejudice by being unable to participate in the underlying lawsuit, including conducting its own investigation, communicating with State National regarding its obligations as first-level excess insurer, and participating in any settlement negotiations.  Accordingly, ICSOP seeks judgment in its favor as a matter of law that the County violated the insurance policy and ICSOP owes no coverage under the policy.

The County argues that summary judgment is not proper at this time because the case is in the early stages of discovery and numerous issues of material fact exist.  More specifically, the County argues that issues of fact exist as to the County's claims against Scibal and State National regarding their reporting obligations.  Without the development of facts to flush out the details of Scibal's and State National's conduct during the pendency of the Anderson claim and lawsuit, the County cannot properly defend itself against ICSOP's claims.  Further, issues remain concerning ICSOP's obligations to communicate with the County, Scibal and State National as its position of excess insurer for the County.  Correspondingly, the County contends that there is

6

evidence regarding an ICSOP-initiated communication to State National regarding another case, and the County should be able to investigate ICSOP's protocol with regard to communicating with State National about policy-implicating issues.  The County argues that all of these issues, and most likely others that will arise during discovery, are relevant to whether ICSOP received notice prior to December 4, 2008 and whether ICSOP was truly prejudiced.  Ultimately, the County argues that ICSOP (and State National) cannot disclaim coverage where it was the communication breakdown between them, and not any actions of the County, which proximately caused any appreciable prejudice.  Because the issue of communication, and thereby the issue of prejudice, is still unresolved the County contends, summary judgment in ICSOP's favor is improper at this time.

ICSOP counters that no amount of further discovery will refute what is already on the record: (1) the County, State National and Scibal have all admitted that none of them communicated with ICSOP regarding the Anderson lawsuit until December 4, 2008; (2) State National cannot identify, produce or describe any documents relating to any communications between State National and ICSOP in connection with the Anderson claim; and (3) Scibal cannot provide any evidence demonstrating that it communicated with ICSOP prior to December 4, 2008 regarding the Anderson claim.  These undisputed facts, coupled with no duty on ICSOP's part to "discover" by its

7

own volition whether a policy-implicating claim exists, as well as the insurance policy's requirement that the County, and not some other third party, notify ICSOP of a coverage-implicating claim, all demonstrate that the Court may properly enter summary judgment in its favor.

## DISCUSSION

**A.   Jurisdiction**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

**B.   Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of

the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**C. Analysis**

In a simple case between insurer and insured, "an insurer cannot escape payment of a claim unless improper notice is given by the insured and there is likelihood the insurer has suffered appreciable prejudice." American Centennial Ins. Co. v. Warner-Lambert Co., 681 A.2d 1241, 1245 (N.J. Super. Ct. Law Div. 1995) (citations omitted). Whether appreciable prejudice exists is made in a two-part inquiry: (1) whether substantial rights have

been irretrievably lost and (2) the likelihood of success of the insurer in defending against the victim's claim. Id. (citing Morales v. National Grange Mut. Ins. Co., 423 A.2d 325 (N.J. Super. Ct. Law Div. 1980)). Where, however, primary and excess insurance carriers are involved, the respective duties of the insurance carriers and the insured are, as the insurance itself, more layered. It is well-established under New Jersey law "that the duty owed an excess carrier from a primary carrier is identical to that owed to the insured." General Acc. Ins. Co. v. New York Marine and General Ins. Co., 727 A.2d 1050, 1054 (N.J. Super. Ct. App. Div. 1999) (citations omitted). In other words, a primary carrier, such as State National if it is considered a primary insurer[5], has a duty of care to its insured--the County--as well as to the County's excess insurer, ICSOP. The duty of a primary insurer to an excess insurer exists as a result of the distinctive and unique relationship between the two carriers. Id. "It is reasonable for the excess carrier to rely on the primary carrier to act in good faith," and the "excess carrier may justifiably rely upon a primary carrier to act reasonably in (1) discharging its claims handling obligations; (2) discharging its defense obligations; (3) properly disclosing and apprising the excess

---

[5]State National classifies itself as an excess insurer to the County. (See Compl. ¶ 20.) The County classifies State National as a primary insurer. (See Answer ¶ 20; Opp Br. at 20.) This is an unresolved issue.

10

carrier of events which are likely to effect that carrier's coverage; and (4) safe-guarding the rights and interests of the excess carrier by not placing the primary carrier's own interests above that of the excess insurer." Id. (citations omitted).[6]

Here, State National may have had a duty of care to ICSOP, and ICSOP believes that it did. ICSOP laments that because it did not receive any notice of the Anderson claim, "[n]ot only could ICSOP have participated in settlement discussions with Anderson's attorneys, but ICSOP also could have communicated directly with State National, the carrier with the policy immediately underlying

---

[6]The American Centennial court further explained a primary insurer's good faith duty:

> The primary is in a knowledgeable position as it has current information of the status of an underlying claim, while the excess carrier relies on the primary carrier to keep it properly apprised of negotiation and litigation. It is a unique relationship between the parties, and it is reasonable for the excess carrier to rely on the primary carrier to act in good faith. The primary carrier should understand the risk involved to the excess carrier if it does not perform its duties in good faith. The excess carrier charges the insured a premium that assumes the primary carrier will act in good faith to settle and litigate claims, thereby decreasing the excess carrier's exposure to risk. When the primary carrier does not perform its duties in good faith, the public suffers, as excess carriers will then charge higher premiums for excess coverage. Therefore, the consideration of the unique relationship between the parties, the risk accruing to the excess carrier, and the public interest in lower premiums, mandates the imposition of a duty of good faith and fair dealing upon the primary carrier.

American Centennial Ins. Co. v. Warner-Lambert Co., 681 A.2d 1241, 1247 (N.J. Super. Ct. Law Div. 1995).

11

the ICSOP Policy, and could have reminded State National of its good faith obligations to settle claims against its insured within policy limits." (ICSOP Br. at 11.) Indeed, according to ICSOP, State National declined to enter into settlement discussions with Mr. Anderson's lawyer, who indicated that $10 million would have settled the case. If State National had engaged in settlement discussions and settled for $10 million, ICSOP's insurance policy would not have been triggered. Additionally, there is evidence in the record that also speaks to the special relationship between ICSOP and State National: during the relevant time period, ICSOP and State National communicated as primary and excess insurers for the County regarding another claim against the County. Thus, it is clear that State National may have had a special duty to ICSOP, and that duty may affect ICSOP's claims against the County.

How and whether this special duty impacts ICSOP's claims against the County cannot be answered at this time.[7] Despite evidence already in the record concerning the County's failure to notify ICSOP directly of the Anderson claim, and the apparent prejudice ICSOP suffered as a result, the obligations and duties of primary and excess insurers (or first-level excess and second-level excess insurers) show that there may be more to this case than the

---

[7]Compare General Acc. Ins. Co. v. New York Marine and General Ins. Co., 727 A.2d 1050, 1054 (N.J. Super. Ct. App. Div. 1999) (citations omitted) (declining to extend the duty where the two insurance carriers each had a primary obligation to defend-- "the position of both carriers was the same").

12

County's failure to comply with the duty under the excess insurance policy to notify ICSOP of the Anderson lawsuit.[8]  Moreover, the record is incomplete with regard to Scibal's communications with representatives of the relevant carriers and the relationship between these entities.  This discovery is important before any final determinations may be made about what agency relationships may have existed; what duties were created as a result; and who may be responsible for any obligations breached.  Although it may turn out to be as simple as argued by ICSOP,[9] and while we view its argument at this early stage to be compelling,[10] we will

---

[8] ICSOP has not filed any direct claims against State National.  Instead, ICSOP's claims against State National are derivative--only in the event that ICSOP is found to owe coverage to the County are ICSOP's indemnification/contribution claims against State National (as well as Scibal and Whiteside) implicated.

[9] ICSOP hinges its arguments on the alternative holding of American Centennial Ins. Co. v. Warner-Lambert Co., 681 A.2d 1241 (N.J. Super. Ct. Law Div. 1995) contained in a footnote.  The holding of American Centennial was based on the standard of care between a primary insurer and an excess insurer.  Under that standard, the court found that the primary insurer breached its duty to the excess insurer.  In a footnote, the American Centennial court stated that in the event the cases discussing the special duty between primary and excess insurance carriers were not controlling, and the more simple insurer/insured standard applied, the court still found that the excess insurer suffered appreciable prejudice.  American Centennial, 681 A.2d at 1246 n.2.  Despite ICSOP's focus on the alternative holding, the Court cannot ignore the law concerning the special relationship between primary and excess insurers.

[10] We note that we reject the County's argument, citing old precedent from another circuit, that partial summary judgment motions are disfavored.  On the contrary, assuming adequate discovery or the futility of additional discovery such motions

13

nonetheless allow the County some discovery beyond answers to interrogatories to flush out these issues. As recognized by the Third Circuit, "discovery digs subsurface and may unearth facts that tend to support the contrary conclusion." <u>Doe v. Abington Friends School</u>, 480 F.3d 252, 259 (3d Cir. 2007) (also noting "[a]s any practicing attorney can attest, federal litigation revolves around the generous and wide-ranging discovery provided by the Federal Rules of Civil Procedure," and "[a]s a result, it is well established that a court is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery. This is necessary because, by its very nature, the summary judgment process presupposes the existence of an adequate record" (internal citations omitted)).[11]

---

are favored by rule and more recent precedent. <u>See</u> Fed. R. Civ. P. 56(a) ("A party claiming relief may move . . . for summary judgment on all or part of the claim . . . ."); Fed. R. Civ. P. 56, Advisory Committee Notes (stating that the ability of a court to enter partial summary judgment "serves the purpose of speeding up litigation by eliminating before trial matters wherein there is no genuine issue of fact"); <u>In re G-I Holdings Inc.</u>, 369 B.R. 832, 836 (D.N.J. 2007); <u>Interfaith Community Organization v. Honeywell Intern., Inc.</u>, 188 F. Supp. 2d 486, 501 (D.N.J. 2002); <u>see also</u> <u>RePass v. Vreeland</u>, 357 F.2d 801, 804 (3d Cir. 1966) (explaining that although motions for partial summary judgment may not be appropriate when there is a single claim, "in cases involving more than one claim the district court may enter summary judgment on one or more but less than all the claims").

[11]ICSOP argues that the County is not entitled to additional discovery pursuant to Fed. R. Civ. P. 56(f) as the County requests. Rule 56(f) is one avenue available to a party opposing summary judgment to request additional discovery in opposition to a summary judgment motion. Rule 56(f) provides, "When Affidavits Are Unavailable. If a party opposing the motion shows by

**CONCLUSION**

The Court will deny without prejudice ICSOP's motion for summary judgment, but allow it to refile its motion at an appropriate time once the relevant discovery has been completed. An appropriate Order will be entered.

Date: December 10, 2009                             s/ Noel L. Hillman

At Camden, New Jersey                          NOEL L. HILLMAN, U.S.D.J.

---

affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order." The Court does not deny ICSOP's motion specifically in reference to Rule 56(f)(2), but rather pursuant to Rule 56(c) because genuine issues of fact remain, and Rule 56(f)(1) because the County has demonstrated that more facts are needed in order for it to properly oppose ICSOP's motion.

15