**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

---

STATE NATIONAL INSURANCE
COMPANY,
    Plaintiff,
     v.

THE COUNTY OF CAMDEN and
ASSISTANT COUNTY COUNSEL DONNA
WHITESIDE,
    Defendants.

THE COUNTY OF CAMDEN,
    Counterclaimant and
    Third-Party Plaintiff,

     v.

STATE NATIONAL INSURANCE
COMPANY,
    Counterclaim-Defendant

    and

NICHOLAS M. ANDERSON,
    Third-Party Defendant,

    and

SCIBAL ASSOCIATES, INC.,
    Third-Party Defendant and
    Third-Party Counterclaimant.

SCIBAL ASSOCIATES, INC.,
    Fourth-Party Plaintiff,

     v.

DONNA WHITESIDE and MEADOWBROOK
INSURANCE GROUP,
    Fourth-Party Defendants.

THE INSURANCE COMPANY OF THE
STATE OF PENNSYLVANIA,
    Intervening Plaintiff,

     v.

THE COUNTY OF CAMDEN, DONNA
WHITESIDE and SCIBAL ASSOCIATES,
    Defendants.

CIV. NO. 08-5128(NLH)(AMD)

**OPINION**

**APPEARANCES:**

PETER E. MUELLER
HARWOOD LLOYD, LLC
130 MAIN STREET
HACKENSACK, NJ 07601

WALTER J. ANDREWS
MICHAEL S. LEVINE
ROCKLAN W. KING III
HUNTON & WILLIAMS LLP
1751 PINNACLE DRIVE
SUITE 1700
MCLEAN, VA 22102

     On behalf of State National Insurance Company and Meadowbrook
     Insurance Group

WILLIAM M. TAMBUSSI
JOSEPH T. CARNEY
WILLIAM F. COOK
BROWN & CONNERY, LLP
360 HADDON AVENUE
P.O. BOX 539
WESTMONT, NJ 08108

     On behalf of the County of Camden

ALAN J. BARATZ
JOSEPH T. DALY
WEINER LESNIAK
629 PARSIPPANY ROAD
POST OFFICE BOX 438
PARSIPPANY , NJ 07054-0438

     On behalf of Scibal Associates, Inc.

MICHAEL J. CANNING
CATHERINE JEAN BICK
MATTHEW NICHOLAS FIOROVANTI
GIORDANO HALLERAN & CIESLA, PC
125 HALF MILE ROAD
PO BOX 190
MIDDLETOWN, NJ 07748

     On behalf of Donna Whiteside

JEFFREY MATTHEW BEYER

2

MARK D. SHERIDAN
DRINKER BIDDLE & REATH LLP
500 CAMPUS DRIVE
FLORHAM PARK, NJ 07932-1047

    On behalf of The Insurance Company of the State of
    Pennsylvania

**HILLMAN**, District Judge

    This case concerns the determination of which entity or person

is liable to pay for a multi-million dollar state court jury

verdict in favor of a plaintiff who sued the County of Camden, New

Jersey for injuries he sustained when he drove off the road and

into a guardrail owned and maintained by the County.  Presently

before the Court are the motions of County in-house counsel Donna

Whiteside to dismiss the claims made against her by plaintiff State

National Insurance Company and intervening plaintiff The Insurance

Company of the State of Pennsylvania ("ICSOP").  For the reasons

expressed below, Whiteside's motions will be granted.

**BACKGROUND**

    Because this is the third Opinion addressing motions by

various parties, the Court will not restate the background facts,

other than to summarize them as follows.  On December 23, 2004,

Nicholas Anderson was driving on Raritan Avenue in Waterford, New

Jersey when he drove off the road and hit a guardrail.  Anderson

sustained serious injuries, including an amputated leg and nearly

amputated arm.  On December 20, 2006, Anderson filed suit in New

Jersey state court against the County of Camden (the "County"),

3

which owned and maintained the road and guardrail.  Anderson
claimed that the County's negligent maintenance of the road and
guardrail were the proximate cause of his injuries.  The case went
to trial, and on October 17, 2008, the jury returned a $31 million
verdict against the County, which has since been adjusted tom just
under $19.5 million.  On October 20, 2008, State National Insurance
Company ("State National") filed a declaratory judgment action in
this Court against the County, seeking a declaration that it does
not owe coverage to the County for the Anderson lawsuit under an
excess liability insurance contract.  State National contends that
the County's delay in notifying it of the lawsuit, its repeated
representation that the case was within the County's $300,000 self-
insured retention, its errors in investigating and defending the
case, and its revaluation of the case four days into trial,
breached the insurance contract's notice provision and the adequate
investigation and defense condition to coverage.  In its amended
complaint, State National also contends, *inter alia*, that Donna
Whiteside, in-house counsel for the County who handled the Anderson
case, committed legal malpractice by not properly defending the
County and State National's interests.

Shortly after State National filed its complaint, ICSOP filed
an intervening third-party complaint against State National, the
County, Whiteside, and Scibal Associates.  ICSOP had provided an
excess liability policy to the County, effective July 1, 2004

4

through July 1, 2005, with limits of liability of $5 million for
each occurrence and in the aggregate.  According to ICSOP, the
ICSOP policy was not to be implicated until the County's $300,000
self-insured retention and the $10 million first-level excess
liability insurance policy limits provided by State National were
met.  In its third-party complaint, ICSOP seeks a declaration that
the County breached the notice provision in the ICSOP insurance
policy, and it therefore is not obligated to pay the $5 million
policy limit.  Specifically, ICSOP claims that the County's failure
to notify ICSOP of the Anderson lawsuit until seven weeks after the
jury verdict--three years after the filing of the lawsuit and four
years after the accident--violates the policy's requirement to
notify ICSOP "as soon as practicable of any accident or occurrence
which may result in any claim or suit" under the policy.  Because
the County breached the notice requirement, ICSOP contends that it
suffered appreciable prejudice by being unable to participate in
the underlying lawsuit, including conducting its own investigation,
communicating with State National regarding its obligations as
first-level excess insurer, and participating in any settlement
negotiations.  ICSOP further attributes its damages specifically to
County counsel Whiteside, and has asserted claims for
indemnification and contribution against her should it be
determined that ICSOP must pay.

    Whiteside has moved to dismiss State National's and ICSOP's

claims against her.  As discussed in more detail below, Whiteside
argues that even if all of State National's claims against her are
true, State National cannot prove any damages attributable to her,
and therefore its claims against her must be dismissed.  Whiteside
also argues that ICSOP's claims against her must be dismissed for
the same reasons as State National's, but also because ICSOP's
claims for contribution and indemnification are unsupportable by
law.  Additionally, Whiteside contends that the claims of both
State National and ICSOP are premature, and they must be dismissed
on that basis if not for the other reasons.

**DISCUSSION**

**A.   Jurisdiction**

This Court has jurisdiction over this matter pursuant to 28
U.S.C. § 1332 because there is complete diversity of citizenship
between the parties and the amount in controversy exceeds $75,000.

**B.   Motion to Dismiss Standard**

When considering a motion to dismiss a complaint for failure
to state a claim upon which relief can be granted pursuant to Fed.
R. Civ. P. 12(b)(6), a court must accept all well-pleaded
allegations in the complaint as true and view them in the light
most favorable to the plaintiff.  Evancho v. Fisher, 423 F.3d 347,
351 (3d Cir. 2005).  It is well settled that a pleading is
sufficient if it contains "a short and plain statement of the claim
showing that the pleader is entitled to relief."  Fed. R. Civ. P.

6

8(a)(2).  Under the liberal federal pleading rules, it is not
necessary to plead evidence, and it is not necessary to plead all
the facts that serve as a basis for the claim.  Bogosian v. Gulf
Oil Corp., 562 F.2d 434, 446 (3d Cir. 1977).  However, "[a]lthough
the Federal Rules of Civil Procedure do not require a claimant to
set forth an intricately detailed description of the asserted basis
for relief, they do require that the pleadings give defendant fair
notice of what the plaintiff's claim is and the grounds upon which
it rests."  Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147,
149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks "'not
whether a plaintiff will ultimately prevail but whether the
claimant is entitled to offer evidence to support the claim.'"
Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1969 n.8 (2007) (quoting
Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v.
Iqbal, 129 S. Ct. 1937, 1949 (2009) ("Our decision in Twombly
expounded the pleading standard for 'all civil actions' . . . .");
Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal
. . . provides the final nail-in-the-coffin for the 'no set of
facts' standard that applied to federal complaints before
Twombly.").

Following the Twombly/Iqbal standard, the Third Circuit has
instructed a two-part analysis in reviewing a complaint under Rule
12(b)(6).  First, the factual and legal elements of a claim should

7

be separated; a district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. <u>Fowler</u>, 578 F.3d at 210 (citing <u>Iqbal</u>, 129 S. Ct. at 1950). Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" <u>Id.</u> (quoting <u>Iqbal</u>, 129 S. Ct. at 1950). A complaint must do more than allege the plaintiff's entitlement to relief. <u>Id.</u>; <u>see also</u> <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the "Supreme Court's <u>Twombly</u> formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element"). A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss. <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1429-30 (3d Cir. 1997). The defendant bears the burden of showing that no claim has been presented. <u>Hedges v. U.S.</u>, 404 F.3d 744, 750 (3d Cir. 2005) (citing <u>Kehr Packages, Inc. v. Fidelcor, Inc.</u>, 926 F.2d 1406, 1409 (3d Cir. 1991)).

Finally, a court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached

thereto as exhibits, and matters of judicial notice.  Southern
Cross Overseas Agencies, Inc. v. Kwong Shipping Group Ltd., 181
F.3d 410, 426 (3d Cir. 1999).  A court may consider, however, "an
undisputedly authentic document that a defendant attaches as an
exhibit to a motion to dismiss if the plaintiff's claims are based
on the document."  Pension Benefit Guar. Corp. v. White Consol.
Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  If any other
matters outside the pleadings are presented to the court, and the
court does not exclude those matters, a Rule 12(b)(6) motion will
be treated as a summary judgment motion pursuant to Rule 56.  Fed.
R. Civ. P. 12(b).

**C.   Analysis**

       To resolve Whiteside's motions concerning State National's and
ICSOP's claims against her, the relationships between Whiteside,
the County, and the insurance companies, as well as their
respective duties to each other, must be examined.  It is
undisputed that the County has an insurance contract with both
ICSOP and State National, and, therefore, their duties to each
other sound in contract.  It is also undisputed that Whiteside, a
lawyer, is the County's employee.  The parties appear to disagree,
however, as to Whiteside's duties to the insurance companies.
State National claims that Whiteside holds an independent
attorney/client relationship with it, as well as an independent
contractual and fiduciary duty to it.  State National claims that

9

Whiteside breached these duties, and is liable to State National for damages it has suffered, including potentially having to pay under the County's insurance policy, and for legal fees and costs of suit. ICSOP does not advance any direct claims against Whiteside, but rather contends that it has a right of equitable subrogation to sue Whiteside for her alleged professional negligence. ICSOP contends that if it has to pay under the insurance contract with the County, it is because of Whiteside's malpractice, and it should be able to recover its payout from Whiteside.

Boiled down to its essence, State National's complaint against Whiteside is that it has suffered damages because (1) she was negligent in her legal representation of State National, who was her client, and (2) it potentially has to pay the County under the insurance policy for an amount that would not have been incurred if she had not been negligent in her reporting duties under the policy and in defending the Anderson lawsuit. Similarly distilled, ICSOP's complaint against Whiteside is that it does not have to fulfill its obligations under the insurance policy with the County because of Whiteside's negligence. Effectively, both State National and ICSOP claim that Whiteside can be held legally responsible for paying the $19 million verdict to Anderson. This premise, however, fails as a matter of law.

All three parties have presented extensive arguments on

10

various legal principles--some complex and others arcane--as to why or why not Whiteside should be left holding the proverbial bag.  As argued first by Whiteside, however, the issue is rather simple: no matter what Whiteside did, her conduct cannot be held to be the proximate cause of State National's or ICSOP's alleged damages.

Both insurers--ICSOP especially--want to make sure that Whiteside is held personally responsible for any malpractice she committed.  Although that sentiment seems fair as a general proposition, it is irrelevant to this situation.  It cannot be forgotten that the relationships between State National and the County and ICSOP and the County are ones of contract, and the breach of those contracts is the basis for State National's and ICSOP's declaratory judgment actions against the County.  If it is found that the County, by and through its lawyer employee, breached the insurance contract with State National and/or ICSOP, the insurers will not be required to pay under the policy.  Despite any alleged malpractice by Whiteside that the insurers wish she atone for, it is the County, and not State National or ICSOP, that has to pay for that negligence.  The County accepted this potential outcome by conducting its own defense.[1]  Conversely, if it is found

---

[1]ICSOP makes a policy argument that it is inequitable for an in-house lawyer to be insulated from malpractice claims while an outside, retained lawyer is not.  Although this is true in a technical sense-- the County, a non-person entity, is vicariously responsible for the acts of its employees--retained lawyers are often similarly protected by virtue of being employed by a law firm--also a non-person entity vicariously responsible for the

that the County, by and through its lawyer employee, did not breach the insurance contract, then there cannot be any malpractice upon which State National and ICSOP can base a declination of coverage.

The insurers attempt to separate the County and Whiteside into two distinct and independent defendants.  The problem is that the County, as a non-person entity, obviously cannot act--its actions are those of its employees.  In other words, when the insurers contend that the County breached its obligations under the insurance policy, it was Whiteside, and perhaps other County employees, who perpetrated that alleged breach.  It is the County-- through Whiteside--that allegedly failed to conduct an adequate investigation or provide a proper defense.  Because the County and Whiteside are one-in-the-same, and the insurers had a contract with the County, they cannot maintain separate and independent causes of action against Whiteside.[2]

---

acts of its lawyer employees.  Furthermore, just as a law firm maintains malpractice insurance on behalf of its attorneys, so does the County.  ICSOP asks, "[W]hat is the purpose of the employed lawyers' professional liability policy?" if it cannot maintain a malpractice claim against her.  There are many scenarios that may implicate such insurance--e.g., a County counsel fails to file appropriate paperwork regarding land development and a developer sues the County for damages resulting from that error.  Whether the County maintains malpractice insurance for its lawyer employees is not dispositive, however, to the issue of whether ICSOP can maintain its claims against Whiteside.

[2]This explains why ICSOP's equitable subrogation claim fails.  Equitable subrogation is a legal construct employed by courts when one person, acting involuntarily or under some obligation, pays the debt of another.  See Feigenbaum v.

The singular identity of the County and its employee Whiteside has long been supported by New Jersey law.  Under the doctrine of *respondeat superior*, an employer is liable for the torts of one of its employees when the employee was acting within the scope of his or her employment.  <u>Di Cosala v. Kay</u>, 450 A.2d 508, 513 (N.J. 1982) (citations omitted).  Further, the "decided weight of authority is that where employer and employee are joined as parties defendant in an action for injuries allegedly occasioned solely by the negligence or misfeasance of the employee, a verdict which

_____

<u>Guaracini</u>, 952 A.2d 511, 519 (N.J. Super. Ct. App. Div. 2008).  A subrogee's rights can rise no higher than those of the subrogor, however, as "the subrogee, who succeeds to the position of the subrogor, may recover only if the subrogor likewise could have recovered."  <u>Id.</u> (citations and quotations omitted).  The rule is designed to facilitate the placement of the burden of debt on the party who should bear it.  <u>See id.</u>  In the excess insurance context, although not specifically addressed in New Jersey case law, an excess insurer, upon discharging an insured's liability, can become equitably subrogated and may assert its insured's claims against third parties, including a primary insurer.  <u>Greater New York Mut. Ins. Co. v. North River Ins. Co.</u>, 85 F.3d 1088, 1095 (3d Cir. 1996) (explaining Pennsylvania law).

Here, it appears that if it determined that ICSOP has to pay under the insurance contract with the County, ICSOP wishes to step into the shoes of its insured, the County, to sue Whiteside for legal malpractice.  This premise is illogical and unsupportable.  Even if the County were able to sue Whiteside, which is dubious, <u>see</u> <u>Warren Hosp. v. American Cas. Co. of Reading, PA</u>, 2009 WL 3074611, *4 (D.N.J. Sept. 23, 2009) discussing <u>Eule v. Eule Motor Sales</u>, 170 A.2d 241, 243 (N.J. 1961) and <u>Maryland Casualty Co. v. New Jersey Manufacturers Insurance Co.</u>, 137 A.2d 577, 585 (N.J. Super. Ct. App. Div. 1958)) (stating that New Jersey had long-ago abandoned the theory that an employer can seek indemnification from an employee for the employee's negligence, except in rare circumstances), it would have no basis for doing so, as her conduct, imputed to the County, would have not been found to have breached the policy terms.

exonerates the employee from liability requires also the exoneration of the employer." <u>Kelley v. Curtiss</u>, 108 A.2d 431, 434 (N.J. 1954) (citations omitted).  This "rule is founded upon considerations of fundamental fairness that, if the employee is not to be held responsible for his wrongdoing, the employer whose liability is asserted solely upon the basis of imputed responsibility for his employee's wrong cannot in fairness and justice be required to respond in damages for it."  <u>Id.</u>

These principles confirm that the insurance companies cannot maintain their claims against Whiteside.  Whatever Whiteside's conduct, that is for the County to bear as her employer.  The insurance companies can point to Whiteside's conduct to prove their claims that the County breached its obligations under the insurance contracts.  If they are successful in proving that claim, they will not have to pay under the policies.  If they are not successful in demonstrating that the County, through Whiteside, breached the policies' terms, they will have to pay.[3]  Any direct claim by the insurance companies against Whiteside for that same conduct would be superfluous.

In deciding whether the insurance companies have stated viable claims against Whiteside, the Court must consider whether they are

---

[3]The Court issues no decision on the insurance companies' claims against other defendants and/or each other for indemnification or other direct claims.

14

entitled to offer evidence to support their claims.  See Bell
Atlantic v. Twombly, 127 S. Ct. 1955, 1969 n.8 (2007).  As
discussed, even gathering all the proof to reconstruct Whiteside's
conduct will not support the finding that she was the proximate
cause of any of their damages.  Proximate cause is a term that
draws "judicial lines beyond which liability will not be extended"
and "is fundamentally as an instrument of fairness and policy."
Caputzal v. Lindsay Co., 222 A.2d 513, 517-18 (N.J. 1966).  "Many
years ago a case in [New Jersey] hit it on the head when it was
said that the determination of proximate cause by a court is to be
based 'upon mixed considerations of logic, common sense, justice,
policy, and precedent.'"  Id. (citation omitted).  In this case,
the insurance companies are seeking to avoid any obligation under
their insurance contracts with the County to pay their policy
limits to satisfy the $19 million verdict against the County.  If
they prove that Whiteside's handling of the Anderson lawsuit was
negligent and caused the County to breach its obligations under the
insurance policies, they avoid liability.  Being successful on any
claims, either direct, derivative or contingent, against Whiteside
for her conduct would provide the same result.  Conversely, if
Whiteside's conduct is not found to have caused the County to
breach its duties under the insurance policies, the contracts must
be honored.  A concurrent claim against Whiteside for the same
conduct would also provide the same result.  Either way, "logic,

common sense, justice, policy, and precedent" all direct that Whiteside's conduct cannot be the cause of any injury to State National and ICSOP.  Without damages caused by Whiteside, the insurance companies' claims against her fail as a matter of law, and are appropriately disposed of pursuant to Rule 12(b)(6).[4]

## CONCLUSION

For the foregoing reasons, the Court will grant Donna Whiteside's motions to dismiss State National's and ICSOP's claims against her.  An appropriate Order will be entered.

Date: March 17, 2010                         s/ Noel L. Hillman

At Camden, New Jersey                   NOEL L. HILLMAN, U.S.D.J.

---

[4]The Court also recognizes that because neither State National nor ICSOP has paid under the insurance policies, it has not yet incurred any damages allegedly attributable to Whiteside's conduct.  Indeed, they may never have to pay, depending on the resolutions of their claims against the County and all the claims against Scibal, the County's claims administrator.  The Court makes no determination as to whether this is another basis for dismissal of their claims against Whiteside.