**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| STATE NATIONAL INSURANCE COMPANY,<br>　　Plaintiff,<br>　　　v.<br>THE COUNTY OF CAMDEN and ASSISTANT COUNTY COUNSEL DONNA WHITESIDE,<br>　　Defendants.<br><br>THE COUNTY OF CAMDEN,<br>　　Counterclaimant and<br>　　Third-Party Plaintiff,<br>　　　v.<br>STATE NATIONAL INSURANCE COMPANY,<br>　　Counterclaim-Defendant<br><br>and<br><br>NICHOLAS M. ANDERSON,<br>　　Third-Party Defendant,<br><br>and<br><br>SCIBAL ASSOCIATES, INC.,<br>　　Third-Party Defendant and<br>　　Third-Party Counterclaimant.<br><br>SCIBAL ASSOCIATES, INC.,<br>　　Fourth-Party Plaintiff,<br>　　　v.<br>DONNA WHITESIDE and MEADOWBROOK INSURANCE GROUP,<br>　　Fourth-Party Defendants.<br><br>THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA,<br>　　Intervening Plaintiff,<br>　　　v.<br>THE COUNTY OF CAMDEN and SCIBAL ASSOCIATES,<br>　　Defendants. | CIV. NO. 08-5128(NLH)(AMD)<br><br>**OPINION** |

**APPEARANCES:**

ALAN J. BARATZ
JOSEPH T. DALY
WEINER LESNIAK
629 PARSIPPANY ROAD
POST OFFICE BOX 438
PARSIPPANY , NJ 07054-0438

    On behalf of Scibal Associates, Inc.

HOWARD D. COHEN
PARKER, MCCAY, PA
1009 LENOX DRIVE
BUILDING FOUR EAST
SUITE 102A
LAWRENCEVILLE, NJ 08648

    On behalf of Commerce Insurance Services

**HILLMAN**, District Judge

    This matter concerns the determination of which entity or person is liable to pay for a multi-million dollar state court jury verdict in favor of a plaintiff who sued the County of Camden, New Jersey for injuries he sustained when he drove off the road and into a guardrail owned and maintained by the County.  Presently before the Court is the motion of Commerce Insurance Services to dismiss fourth-party plaintiff Scibal Associates, Inc.'s claims against it.  For the reasons expressed below, Commerce's motion to dismiss will be granted.

## BACKGROUND

    As summarized before in the Court's several previous Opinions in this case, on December 23, 2004, Nicholas Anderson was driving on Raritan Avenue in Waterford, New Jersey when he drove off the

road and hit a guardrail.  Anderson sustained serious injuries, including an amputated leg and nearly amputated arm.  On December 20, 2006, Anderson filed suit in New Jersey state court against the County of Camden (the "County"), which owned and maintained the road and guardrail.  Anderson claimed that the County's negligent maintenance of the road and guardrail were the proximate cause of his injuries.  The case went to trial, and on October 17, 2008, the jury returned a $31 million verdict against the County.[1]

On October 20, 2008, State National Insurance Company ("State National") filed a declaratory judgment action in this Court against the County,[2] seeking a declaration that it does not owe coverage to the County for the Anderson lawsuit under an excess liability insurance contract.  State National contends that the County's delay in notifying it of the lawsuit, its repeated representation that the case was within the County's $300,000 self-

---

[1] The $31 million award was adjusted by the state court trial judge twice--first on January 16, 2009 to approximately $16 million, and then in response to Anderson's motion for reconsideration, it was further adjusted to $19,374,424.30 on February 20, 2009.  On or about June 12, 2009, the state court judge denied a motion for reconsideration filed by the County seeking a new trial based on newly discovered evidence.

[2] The County has recently challenged State National's involvement in this action, and has contended that non-party Meadowbrook Insurance Group is improperly prosecuting the case in State National's name.  This issue is the subject of the County's pending summary judgment motion, as well as several discovery motions before the Magistrate Judge.  The issue is not directly relevant to Commerce's motion to dismiss Scibal's Fourth-Party Complaint.

3

insured retention, its errors in investigating and defending the case, and its revaluation of the case four days into trial, breached the insurance contract's notice provision and the adequate investigation and defense condition to coverage.

State National's declaratory judgment action has spawned numerous counterclaims, third-party and fourth-party complaints, and an intervening plaintiff complaint.  Presently before the Court is the motion of Commerce Insurance Services ("Commerce")[3] to dismiss the fourth-party complaint filed against it by Scibal Associates, Inc. ("Scibal").  Commerce is the broker who procured for the County an excess insurance policy from intervenor Insurance Company of the State of Pennsylvania ("ICSOP").  Scibal is the County's claims administrator.  Scibal filed suit against Commerce based on Scibal's potential liability to the County and to ICSOP.[4]

In the County's third-party complaint, the County asserts claims against Scibal for breach of its duties as the County's claims administrator.  The County claims that pursuant to their Professional Services Agreement ("PSA"), Scibal agreed to perform services for the County, including reporting all claims to the County's excess carrier and reinsurers in accordance with those

---

[3]Commerce Insurance Services is now known as Conner Strong, Inc.

[4]Scibal had also previously advanced fourth-party claims against two parties who are no longer defendants in this case. The Court had found that Scibal had failed to state viable claims against those defendants.  (See Docket No. 174.)

4

entities' reporting requirements and preparing and providing claim reports reasonably required by the excess insurance carriers. The County claims that Scibal breached these duties by failing to notify its insurance carriers that the Anderson lawsuit was filed. The County also claims that should it be found liable to State National on its claims against the County, Scibal is partially or fully responsible based on the principles of contribution and indemnification due to Scibal's breach of the PSA.

Similarly, ICSOP has filed claims against Scibal, alleging that Scibal breached the notice provision of the ICSOP policy, and indemnification and contribution against Scibal in the event ICSOP is deemed liable to the County.

Based on the County's and ICSOP's claims against Scibal, Scibal advances its claims against Commerce.[5] Scibal contends that Commerce promised to the County that it would inform Scibal that it procured the ICSOP policy, but that Commerce failed to do so. Scibal contends that it was the intended third-party beneficiary of that agreement between Commerce and the County, and, therefore, Commerce's failure to notify Scibal about the ICSOP policy makes Commerce liable (in contract and tort) to Scibal for any liability that is imposed on Scibal for its failure to notify ICSOP about the Anderson lawsuit. Commerce has moved to dismiss these claims against it. Scibal has opposed the motion.

---

[5]Scibal also advances a counterclaim against the County.

5

## **DISCUSSION**

**A.   Jurisdiction**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

**B.   Standard for Motion to Dismiss**

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim.  Bogosian v. Gulf Oil Corp., 562 F.2d 434, 446 (3d Cir. 1977).  However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

6

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1969 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail-in-the-coffin for the 'no set of facts' standard that applied to federal complaints before Twombly.").

Following the Twombly/Iqbal standard, the Third Circuit has instructed a two-part analysis in reviewing a complaint under Rule 12(b)(6).  First, the factual and legal elements of a claim should be separated; a district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Fowler, 578 F.3d at 210 (citing Iqbal, 129 S. Ct. at 1950).  Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'"  Id. (quoting Iqbal, 129 S. Ct. at 1950).  A complaint must do more than allege the plaintiff's entitlement to relief.  Id.; see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the "Supreme Court's Twombly formulation of the pleading standard

7

can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element").    A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997).  The defendant bears the burden of showing that no claim has been presented.  Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

     Finally, a court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice.  Southern Cross Overseas Agencies, Inc. v. Kwong Shipping Group Ltd., 181 F.3d 410, 426 (3d Cir. 1999).  A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).   If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56.  Fed.

8

R. Civ. P. 12(b).

**C.  Analysis**

As discussed briefly above, the PSA between Scibal and the Country required Scibal to inform all of the County's insurers of claims made against the County that may implicate insurance coverage.  Scibal contends that it was unable to fulfill its obligation to notify ICSOP of the Anderson lawsuit because it was not even aware that the County had an insurance policy with ICSOP.  Scibal attributes its failure in this regard to Commerce, which allegedly did not fulfill its promise to the County that it would inform Scibal of the ICSOP policy.  Scibal contends that by Commerce's breach of its agreement with the County, Commerce is liable to Scibal for any damages it must pay to the County and ICSOP.

Commerce has moved to dismiss Scibal's claims on a very simple basis--that Commerce had no contract with Scibal, and, thus, Commerce cannot be held liable to Scibal for a breach of any purported contract between Commerce and the County.  Relatedly, to the extent that Scibal has asserted negligence claims for indemnification and contribution, Commerce argues that it had no duty to Scibal simply by virtue of its promise to the County.  In response, Scibal argues that it was the intended third-party beneficiary of the agreement between Commerce and the County, and that by breaching that contract with the County, Commerce

9

effectively breached a contract with Scibal, or was negligent in its duties to Scibal.

If this were a school-yard scuffle, Scibal's position would seem fair. Taking as true Scibal's claims, Commerce promised to the County that it would inform Scibal of the County's ICSOP insurance policy. Commerce, however, did not tell Scibal about the ICSOP policy. Thus, it would be unfair to fault Scibal for failing to inform ICSOP about the Anderson lawsuit against the County when it did not even know that the County's ICSOP policy existed. In Scibal's view, if Commerce had just fulfilled its promise to the County, then Scibal would not be subjected to claims by the County and ICSOP, and because it is Commerce's fault that Scibal is indeed subjected to such claims, Commerce should be held liable.

The problems with Scibal's claims against Commerce, however, are that Commerce had no contract with Scibal, and Commerce had no other duty to Scibal. Commerce cannot breach a contract or duty it does not have. Apparently acknowledging that its claims against Commerce must be based on more than general rules of fairness, Scibal argues that even though Commerce had no direct contract with it, Scibal can nonetheless sue for the breach of Commerce's agreement with the County as the intended third-party beneficiary of that agreement. Additionally, Scibal argues that even though Commerce had no specific duty to otherwise tell Scibal about the ICSOP policy it procured for the County, Commerce, as an insurance

10

broker, has a general duty of care toward its insured, and such protections should be extended to Scibal as the agent of the County.

Scibal's positions find no basis in the law. First, Scibal is not a third-party beneficiary of the County's agreement with Commerce. In order to qualify as a third-party beneficiary, the contracting parties must have intended that an unnamed third party should receive a benefit which might be enforced in the courts. See Rieder Communities, Inc. v. Township of North Brunswick, 546 A.2d 563, 567 (N.J. Super. Ct. App. Div. 1988) (citations omitted). A third party has no cause of action despite the fact that it may derive an incidental benefit from the contract's performance. Id. (citation omitted). By way of example, third-party beneficiary claims often arise in the context of lapsed insurance--where an injured person sues an insurer for payment for injuries he received due to the negligence of the insured under a lapsed policy. See Werrmann v. Aratusa, Ltd., 630 A.2d 302, 303 (N.J. Super. Ct. App. Div. 1993) (patron sued restaurant's insurance broker under third-party beneficiary theory for injuries she sustained when she fell off a bar stool, claiming that she was a third-party beneficiary of the broker's agreement with the restaurant to procure insurance, which the broker had failed to renew); Eschle v. Eastern Freight Ways, Inc., 319 A.2d 786 (N.J. Law Div. 1974) (where a passenger injured in a motor vehicle accident sued the driver's insurance

agent because the driver's liability policy had lapsed, the court finding that as a member of the general public, the passenger had both a third-party beneficiary breach of contract and negligence claim against the agent).

In this case, Scibal only qualifies as an incidental beneficiary of the agreement between Commerce and the County. Even if the Court were to accept as true that Commerce promised to the County that it would inform Scibal of the ICSOP policy, and that Scibal was the intended recipient of that information, Scibal cannot enforce any "benefit" of that agreement. Unlike those cases involving insurance benefits, Scibal cannot file suit against the County and Commerce to enforce that agreement and order them to provide Scibal with the information about the ICSOP policy, which information Scibal ostensibly considers the benefit of the agreement. Even classifying the purported promise between Commerce and the County as a contract with possible third-party beneficiaries is a stretch by Scibal.[6] Moreover, Scibal cannot say that the ICSOP policy itself is the enforceable benefit, as Scibal cannot be entitled to any benefits under that insurance policy.

Second, Scibal's claims for negligence, indemnification, and

---

[6]The Court makes no finding as to the existence of a contract between Commerce and the County regarding Commerce's promise to notify Scibal of the ICSOP policy. It does not appear, however, that the County has advanced a breach of contract claim against Commerce for its failure to notify Scibal of the ICSOP policy.

12

contribution are unsustainable. Just because Commerce, as an insurance broker, has a standard of care toward the parties it provides insurance coverage to, that duty does not extend to entities that have business contracts with the insured. Scibal contracted with the County to perform certain services, including keeping abreast of the County's insurance policies and claims implicating those policies. Commerce, the broker who procured the ICSOP policy for the County, has no duty to Scibal under Scibal's agreement with the County to inform it of the insurance it is providing to the County. Thus, there are no duties to Scibal that Commerce breached that would serve as the basis for contribution and indemnification claims sounding in tort. See Siddons v. Cook, 887 A.2d 689, 696 (N.J. Super. Ct. App. Div. 2005) (explaining that a negligence claim requires a plaintiff to establish a duty owed to plaintiff by defendant, a breach of that duty, and an injury caused by defendant's breach); Cherry Hill Manor Associates v. Faugno, 861 A.2d 123, 128 (N.J. 2004) (explaining that it "is well settled that the true test for joint tortfeasor contribution is joint liability and not joint, common or concurrent negligence"); Adler's Quality Bakery, Inc. v. Gaseteria, Inc., 159 A.2d 97, 110 (N.J. 1960) (explaining that the right of indemnity "is a right which enures to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he

himself is only secondarily liable").

Essentially, through its fourth-party complaint, Scibal has taken its defense to the claims lodged against it by the County and ICSOP (i.e., that it cannot be faulted for failing to notify ICSOP of the Anderson lawsuit when it had no idea that the County had an insurance policy with ICSOP) and has attempted to transform that defense into affirmative claims against Commerce, the purported cause the communication failure. However, without some obligation via contract or common law duty between Commerce and Scibal, Commerce cannot be liable for any of Scibal's potential damages. Further, Scibal's entire claim against Commerce rests upon the assumption that if Commerce had informed Scibal about the ICSOP policy, the County's and ICSOP's claims against Scibal could never have been advanced. This assumption, however, demonstrates an additional problem with Scibal's claims--a kink in the proximate causal chain. Although it can never be known what Scibal would have done had Commerce informed it of the ICSOP policy,[7] Scibal had an independent duty under the PSA with the County, separate from any alleged agreement between Commerce and the County regarding notice of the ICSOP policy, to discover all of the County's insurance policies, and inform those insurers about claims implicating those policies. Thus, regardless of the validity of

---

[7]As noted above, the Court has accepted this fact as pleaded by Scibal as true only for the purposes of deciding Commerce's motion to dismiss.

14

Scibal's claims against Commerce, Scibal still faces claims by the County and ICSOP for its own conduct under the PSA, wholly unattributable to any acts by Commerce.

## **CONCLUSION**

For the reasons expressed above, Scibal's fourth-party complaint against Commerce must be dismissed.  An appropriate Order will be entered.


Date: December 17, 2010                     s/ Noel L. Hillman

At Camden, New Jersey                       NOEL L. HILLMAN, U.S.D.J.