[Doc. No. 299]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
_____
STATE NATIONAL INSURANCE COMPANY,  :
                                          Civil No. 08-5128 (NLH/AMD)
  Plaintiff/Counterclaim Defendant, :

            v.                     :

THE COUNTY OF CAMDEN,              :

  Defendant/Counterclaim Plaintiff. :

---------------------------------- :
THE COUNTY OF CAMDEN,
                                   :
  Third-Party Plaintiff/Third-Party
      Counterclaim Defendant,      :

              v.                   :

SCIBAL ASSOCIATES, INC.,           :

  Third-Party Defendant/Third-Party :
      Counterclaim Plaintiff.
---------------------------------- :
SCIBAL ASSOCIATES, INC.,
                                   :
  Fourth-Party Plaintiff,
                                   :
            v.                     :
                                   :
COMMERCE INSURANCE SERVICES, INC., :
                                   :
  Fourth-Party Defendant.
_____    :
```

**ORDER**


        THIS MATTER comes before the Court by way of motion [Doc.
No. 299] of Plaintiff, State National Insurance Company
(hereinafter, "State National"), seeking sanctions against
Defendant, County of Camden (hereinafter, the "County").
Specifically, State National requests adverse inferences, and an

award of attorneys' fees and costs it incurred in connection with demonstrating the County's alleged spoliation of evidence in this case.  The Court has considered the submissions of the parties, and held oral argument on the motion on November 5, 2010.  For the reasons that follow, the Court grants in part and denies in part State National's motion.

As the District Court previously noted, the background of this case "concerns the determination of which entity or person is liable to pay for a multi-million dollar state court jury verdict in favor of a plaintiff, Nicholas Anderson, who sued the County of Camden, New Jersey for injuries he sustained when he drove off the road and into a guardrail owned and maintained by the County." (Op. [Doc. No. 270] 3, June 25, 2010.)  While cross-appeals were pending in state court, the County and Mr. Anderson entered into a settlement agreement of the underlying litigation (hereinafter, "the Anderson litigation").  (See State National's Br. in Suppt. of Mot. to Compel Settlement Documents [Doc. No. 311-1] 1.)  In asserting claims against the County, State National generally contends "that the County breached the insurance contract [in dispute] by failing to adequately investigate and defend the Anderson" litigation.  (Br. in Supp. of Mot. for Sanctions on Behalf of State National [Doc. No. 299-1] (hereinafter, "State National's Sanctions Br."), 4.)  The County has filed counterclaims for breach of the insurance contract.  (Second Am. Answer of the

County of Camden with Affirmative Defenses and Counterclaims [Doc. No. 135] 20-30, ¶¶ 1-51.)

The present motion for sanctions [Doc. No. 299] centers around the County's alleged failures concerning preservation of electronically stored information (hereinafter, "ESI"). State National generally argues that (1) the County had a duty to preserve all discoverable information in this case as early as October 15, 2008, when the County reasonably anticipated litigation with State National based on a letter sent by the County; (2) the County and its attorneys breached that duty by failing to issue a litigation hold letter, failing to disable the automatic deletion system with respect to the County's email exchange server, and failing to maintain daily backup tapes of its email exchange server before the tapes were overwritten and reused; (3) this breach by the County resulted in the permanent deletion and destruction of potentially relevant information that could have been damaging to the County's case; and (4) the evidence that was destroyed or deleted, "if available today, would demonstrate that the County failed to adequately investigate and defend the Anderson litigation." (State National's Sanctions Br. 2, 4.) State National asserts that "[t]he County's actions demonstrate a failure to take any affirmative action to preserve clearly relevant information ... [which] alone warrants sanctions against the County." (Id. at 11.) State National also asserts that sanctions are warranted despite the County's "belated attempts to preserve

3

information" in March of 2009 because these attempts to image various computer hard drives were insufficient to satisfy the County's preservation duty where the "relevant information had already been deleted." (Id. at 15-17.) Accordingly, State National seeks "an adverse [spoliation] inference be imposed against the County ... [and] further requests reimbursement of its reasonable attorneys' fees and costs related to the time and effort that State National was forced to expend pursuing discovery of the destroyed information and in proving that the County ... breached its duties to preserve information." (Id. at 11.) State National seeks fees and costs in excess of $70,000, including legal fees in the amount of $56,476 for preparation of the present motion. (See Certification of Michael S. Levin, Esq. dated September 24, 2010 [Doc. No. 299-4] ¶¶ 13-18.)

In opposition to State National's motion for sanctions, the County first argues that "the earliest date on which the County could have anticipated litigation [with] State National was when th[is] lawsuit was filed on October 20, 2008" because at the time the County issued its October 15, 2008 letter to State National, the County "anticipated that State National would comply with its contractual obligation to protect the County against an adverse verdict." (Br. of the County in Opp'n to Mot. for Sanctions [Doc. No. 316] (hereinafter, "County's Opp'n"), 21.) The County also asserts that there is no basis for sanctions in this instance because there is no "foundational evidence to establish that

4

additional emails not produced by the County actually exist[,]"
since State National has not demonstrated that "attorneys in the
Office of County Counsel regularly review and discuss case via
email" nor produced "a single email in its possession from the time
frames [in question] ... that was not part of the County's document
production." (Id. at 22-23) (emphasis omitted). The County
further contends that the Court cannot make a finding of spoliation
in this case and should not impose an adverse spoliation inference
because State National has failed to present evidence that the
County acted with specific intent or bad faith to destroy relevant
evidence. (Id. at 22.) The County also argues that State National
has not been prejudiced because State National took "full advantage
of [the] opportunity to depose the County individuals who would
have been privy to any conversations regarding the Anderson"
litigation. (Id. at 23.) Finally, the County contends that State
National's attorneys' fees and costs are "[g]rossly [e]xcessive and
[i]nappropriate" with respect to deposition costs, transcript
costs, billable hour rates, and the time spent for depositions and
preparing the instant motion. (Id. at 27-28.)

     In reply, State National asserts that the County "does
not dispute that it failed to implement a litigation hold
concerning information relevant to the Anderson" litigation, and
further argues that the County has conceded "that it did absolutely
nothing to preserve e-mails resident on its network at the time of
the Anderson verdict." (State National's Reply Br. in Supp. of

Mot. for Sanctions. [Doc. No. 323] (hereinafter, "State National's Reply"), 1-2.)   State National also contends that the County's opposition fails to address that the County breached a duty by not preserving relevant information, and attempts to improperly shift the focus to whether State National has proven that the disputed emails exist, despite case law to the contrary.  (State National's Reply 2.)   State National argues that regardless of the precise date on which the County reasonably anticipated litigation with State National and the duty to preserve information arose -- either October 15, 2008 or October 20, 2008 -- "the County breached its duty because it never implemented a litigation hold and it never suspended its automatic e-mail deletion functions, nor did the County prepare a duplicate set of backup tapes or remove from its regular tape rotation those tapes that contained e-mails or other relevant ESI as of October 2008." (Id. at 6-7) (emphasis omitted). Contrary to the County's argument that State National must prove fraud or bad faith by the County, State National asserts that "an adverse inference is appropriate unless the County can prove that the destruction was accidental[,]" and that proof of accidental destruction is lacking here because the County "knowingly and willfully failed to disable the automatic deletion function, and knowingly and willfully continued to recycle its backup tapes." (Id. at 10) (emphasis omitted).  State National also contends that its attorneys' fees and costs are not excessive in light of the numerous briefs, letters, and conferences necessitated by "the

6

County's failure to comply with its ESI discovery obligations" over the fifteen-month period leading up to the filing of the instant motion.  (Id. at 15.)

"Spoliation is 'the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonable foreseeable litigation.'" Bensel v. Allied Pilots Ass'n, 263 F.R.D. 150, 152 (D.N.J. 2009) (citing West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999)).  Further, the Court has the authority to sanction a party for spoliation of evidence under the Federal Rules of Civil Procedure and under the Court's inherent powers.  Mosaid Techs. Inc. v. Samsung Elecs. Co., 348 F. Supp. 2d 332, 335 (D.N.J. 2004) (citing Scott v. IBM Corp., 196 F.R.D. 233, 247-48 (D.N.J. 2000)).  However, prior to the imposition of sanctions for spoliation, the Court must initially determine "whether the duty to preserve evidence has been triggered." Kounelis v. Sherrer, 529 F. Supp. 2d 503, 518 (D.N.J. 2008).  "An independent duty to preserve relevant evidence arises when the party in possession of the evidence knows that litigation by the party seeking the evidence is pending or probable and the party in possession of the evidence can foresee the harm or prejudice that would be caused to the party seeking the evidence if the evidence were to be discarded." Id.; see also Bensel, 263 F.R.D. at 152 ("While there is no duty to keep or retain every document in the party's possession, 'even in advance of litigation, it [a party] is under a duty to preserve what it

7

knows or reasonabl[y] should know, will likely be requested in reasonably foreseeable litigation.'") (citation omitted).  Where "the duty to preserve evidence has not been triggered at the time the evidence was destroyed, then there can be no spoliation." Kounelis, 529 F. Supp. 2d at 518.

The duty to preserve evidence attaches when the party in possession of the evidence knows or reasonably should know that litigation is pending or probable.  See Kounelis, 529 F. Supp. 2d at 518; Bensel, 263 F.R.D. at 152.  Once a party reasonably anticipates or knows of pending litigation and the duty to preserve has attached, a party "must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." sanofi-aventis Deutschland GmbH v. Glenmark Pharm. Inc., No. 07-CV-5855, 2010 WL 2652412, at *3 (D.N.J. July 1, 2010) (citing Major Tours, Inc. v. Colorel, No. 05-3091, 2009 WL 2413631, at *2 (D.N.J. Aug. 4, 2009)); see also Crown Castle USA Inc. v. Fred A. Nudd Corp., No. 05-CV-6163T, 2010 WL 1286366, at *10 (W.D.N.Y. Mar. 31, 2010)("Once the duty to preserve has attached, a party should institute a litigation hold and 'suspend its routine document and retention/destruction policy.'") (citation omitted).

After the Court determines that the duty to preserve evidence exists, the Court must examine whether sanctions should be imposed for spoliation.  See Kounelis, 529 F. Supp. 2d at 518; see also TelQuest Int'l Corp. v. Dedicated Bus. Sys., Inc., No. 06-

5359, 2009 WL 690996, at *3 (D.N.J. Mar. 11, 2009) ("Having determined that [d]efendants violated their duty to preserve evidence, the Court now turns to selecting an appropriate sanction.")[1]  Federal courts have imposed a variety of sanctions for spoliation including: "dismissal of a claim or granting judgment in favor of a prejudiced party; suppression of evidence; an adverse inference, referred to as the spoliation inference; fines; and attorneys' fees and costs." Mosaid, 348 F. Supp. 2d at 335 (citations omitted).  Dismissal of a claim and suppression of evidence are considered the most drastic sanctions and should only be imposed in "the most extraordinary of circumstances." Id.  The Third Circuit has delineated three "key considerations" for determining whether such drastic sanctions are appropriate in a particular case. See Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 79 (3d Cir. 1994).  Specifically, a court must consider "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." Id.

---

1.  The Court notes that "[i]n a diversity lawsuit such as this one, federal law governs the imposition of spoliation sanctions because they constitute an evidentiary matter. Although federal law governs, the Court may look to state law for guidance to the extent that it is consistent with federal law." Point Blank Solutions, Inc. v. Toyobo Am., Inc., No. 09-61166, 2011 WL 1456029, at *8 (S.D. Fla. Apr. 5, 2011).

In this case, State National seeks as sanctions spoliation inferences and attorneys' fees and costs. A jury instruction on the spoliation inference would permit the jury to infer "that the destroyed evidence might or would have been unfavorable to the position of the offending party."[2] See Scott, 196 F.R.D. at 248 (declining to exercise the court's inherent sanctioning powers, but considering as a "second inquiry ... whether the[] circumstances of spoliation, although not rising to the level of sanctionable conduct, should nevertheless give rise to a jury instruction regarding the spoliation inference."). "When the contents of a document are relevant to an issue in the case, the spoliation inference is nothing more than the common sense observation that a party who destroys relevant evidence did so out of a well-founded fear that the contents would harm him." Id. (citing Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 334 (3d Cir. 1995)). Courts have employed a four-factor test to determine whether an adverse inference is appropriate. Mosaid, 348 F. Supp. 2d at 336. These factors are: (1) the destroyed evidence must be within the offending "party's control ...;" (2) "it must appear that there has been actual suppression or withholding of the evidence...;" (3) the "evidence destroyed or withheld was relevant

---

2. The Court notes that State National's amended complaint did not include a jury demand (See Second Am. Compl. [Doc. No. 358]), but that the County's counterclaim for breach of contract includes a jury demand (Second Am. Answer of the County of Camden with Affirmative Defenses and Counterclaims [Doc. No. 135] 20-30, ¶¶ 1-51; 42.)

to the claims or defenses;" and (4) "it was reasonably foreseeable that the evidence would later be discoverable." <u>Mosaid</u>, 348 F. Supp. 2d at 336 (citations omitted); <u>see also</u> <u>Kounelis</u>, 529 F. Supp. 2d at 520.

Initially, the Court notes that the parties do not dispute that the County has a duty to preserve evidence in this case, although the precise date when the duty was triggered is disputed. (<u>See</u> State National's Sanctions Br. 8; County's Opp'n 21.) State National asserts that the County's duty to preserve evidence was triggered on October 15, 2008 -- the date of the County's letter to State National. (<u>See</u> State National's Sanctions Br. 8; County's Opp'n 21.)[3] In its October 15, 2008 letter, the County expressly stated that State National's failure to settle within the policy limits give the County "no choice but to pursue whatever actions [were] available contractually." (<u>See</u> Letter from Howard L. Goldberg, Assistant County Counsel, Ex. C [Doc. No. 299-2] 11.) The County asserts that it could not have reasonably anticipated litigation with State National upon the delivery of the

_____

3.  In the October 15, 2008 letter to State National, the County represents that (1) the plaintiff's attorney in the <u>Anderson</u> litigation formally demanded $10,000,000.00 to settle that litigation; (2) the County was prepared to tender its $300,000.00 retention amount; (3) a "substantial offer" needed to be made on either October 15th or the morning of October 16th to settle the <u>Anderson</u> litigation because the County's exposure "may well exceed the $15,000,000.00 policy limits" since it was likely the jury would return a verdict for the plaintiff; and (4) the County recommended settling the case within the policy limits to avoid the risk of an excess verdict. (<u>See</u> Letter from Howard L. Goldberg, Assistant County Counsel, Ex. C [Doc. No. 299-2] 11.)

October 15, 2008 letter on that date, because "the County anticipated that State National would comply with its contractual obligation to protect the County against an adverse verdict."[4] (County's Opp'n 21.)  The County argues that the earliest date on which the County could have anticipated litigation with State National was October 20, 2008, the date this lawsuit was filed. (Id.)

In the context of this motion, the Court need not determine the precise trigger date.  Rather, the Court finds that the duty to preserve arose no later than October 20, 2008. See also Crown Castle USA, 2010 WL 1286366, at *10 (recognizing that the obligation to preserve evidence arose no later than the date on which plaintiff commenced the lawsuit).  Thus, the County was also under the obligation to implement a litigation hold, including the suspension of its routine document retention/destruction policy to ensure the preservation of relevant documents, by no later than October 20, 2008.  Major Tours, 2009 WL 2413631, at *2 ("Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a litigation hold to ensure the preservation of relevant documents."); see also Crown Castle USA, 2010 WL 1286366, at *10

---

4.  The Court notes that the County's October 15, 2008 letter specifically states that "[a] failure to [settle the Anderson litigation within the policy limits] may well put the County at risk of an excess verdict, in which case [the County] will have no choice but to pursue whatever actions are available contractually."  (See Letter from Howard L. Goldberg, Assistant County Counsel, Ex. C [Doc. No. 299-2] 11.)

("Once the duty to preserve has attached, a party should institute a litigation hold and 'suspend its routine and retention/destruction policy.'") (citation omitted); FED. R. CIV. P. 37, Advisory Committee Notes to 2006 Amendments ("Good faith in the routine operation of an information system may involve a party's intervention to modify or suspend certain features of that routine operation to prevent the loss of information, if that information is subject to a preservation obligation. ... When a party is under a duty to preserve information because of pending or reasonably anticipated litigation, intervention in the routine operation of an information system is one aspect of what is often called a 'litigation hold.'") Here, the County failed to implement a litigation hold or to suspend its routine document retention/deletion policy after the duty to preserve attached no later than October 20, 2008.

This failure to implement a litigation hold and suspend its routine deletion policies persisted even after the County received a letter from State National's counsel on November 24, 2008 specifically requesting a litigation hold.  Moreover, in addition to its failure to implement a litigation hold and suspend its document retention/deletion policy, the County delayed its attempts to preserve such information until March 23, 2009 when the computers of several County employees and the County's Microsoft Exchange server were forensically imaged.  (County's Opp'n 6.)

The County alleges that its email system, as it operated in 2008, included an organization-wide, automatic deletion feature whereby the system automatically deleted emails from the County's Microsoft Exchange Server. (County's Opp'n 8.) As a result of this automatic deletion system, emails in a user's "inbox" were only stored on the server for a period of ninety (90) days, after which those inbox emails were deleted automatically. (Id.) Similarly, emails in a user's "sent box" were only stored on the server for forty-five (45) days before they were automatically deleted. (Id.) With respect to emails in a user's "deleted box", those emails remained on the server for only thirty (30) days before being automatically deleted. (Id. at 8-9.) However, any time a user moved an email from either the inbox, the sent box, or the deleted box, into a "PST" file in Microsoft Outlook, this prevented the email from being subjected to the automatic deletion system. (Id. at 9.) According to the County, emails that were moved into PST files were essentially moved onto the user's C-drive. (Id.) Consequently, if a proper litigation hold had been implemented on October 20, 2008, inbox emails received on or after July 22, 2008; sent box emails sent on or after September 5, 2008; and deleted box emails deleted on or after September 20, 2008 would be preserved. Accordingly, the Court finds that the County had a duty to preserve evidence in this case, but failed to implement a litigation hold in order to preserve such evidence.

14

In light of the Court's finding that the County had a duty to preserve evidence and failed to implement a litigation hold in order to meet its duty, the Court now turns to whether sanctions should be imposed for spoliation.  State National has the burden of demonstrating that the factors for an award of an adverse inference have been met.  See Crown Castle USA, 2011 WL 1456029, at *9 ("The plaintiff, as the moving party on a spoliation motion, has the burden of proof.")

Turning to the spoliation inference factors, the Court finds that the County's failure to preserve emails of its employees satisfies factor one.  There is no dispute that the emails of the County Counsel's Office were within the control of the County.  In addition, State National meets the fourth factor as the Court finds that discovery of email of county employees who were involved in the Anderson litigation was reasonably foreseeable in this insurance dispute.

The major dispute in this motion centers on factors two and three.  With regard to the second factor -- whether there has been "actual suppression" -- the "district courts within the Third Circuit are split regarding the showing necessary to satisfy the 'actual suppression' requirement."  Arteria Prop. PTY. Ltd., v. Universal Funding v. T.O., Inc., No. 05-4896, 2008 WL 4513696, at *4 (D.N.J. Oct. 1, 2008).  The County, relying on Bensel, 263 F.R.D. at 153, and a number of other cases, asserts that the Court must find bad faith and intentional conduct in order to impose

sanctions.  (County's Opp'n 16-19.)  In Bensel, the District Court declined to issue a spoliation inference or to impose any other sanctions because the court did not find any evidence of bad faith, even though the court concluded that the party "should have moved more quickly to place litigation holds on the routine destruction of certain documents and electronic data[.]" 263 F.R.D. at 153; see also Hicks v. Wegmans Food Market, No. 09-624, 2011 WL 499368, at *2 (D.N.J. Feb. 10, 2011) (denying plaintiff's request for an adverse spoliation inference where plaintiff alleged that defendant, at a minimum, was negligent in its destruction or failure to produce the evidence, and at worst, intentionally destroyed or failed to produce the evidence in bad faith, where plaintiff offered "no evidence that the destruction was in bad faith").  State National, however, asserts that adverse inferences are appropriate unless the County proves "accidental" destruction and, relying on Mosaid, further asserts that the culpability of the offending party is irrelevant.  (State National's Reply 11.) Moreover, State National asserts that the County's knowing and deliberate use of an automatic deletion function and continued failure to recycle backup tapes meets the intentional conduct if such a level of culpability is required.  (Id. at 10-11.)

The Court finds that where a party has breached the duty to preserve evidence by failing to institute a litigation hold after the commencement of a lawsuit, and notwithstanding a specific request by opposing counsel to implement such a hold, such conduct

satisfies the requisite culpability for imposing a spoliation inference.  See Mosaid, 348 F. Supp. 2d at 338 ("[N]egligent destruction of relevant evidence can be sufficient to give rise to the spoliation inference.")  In this context, a finding of bad faith or intentional misconduct is not necessary to warrant sanctions.  See sanofi-aventis Deutschland GmbH v. Glenmark Pharm. Inc., No. 07-cv-5855, 2010 WL 2652412, *4 (D.N.J. July 1, 2010). See also Mosaid, 348 F. Supp. 2d at 338.  Rather, the failure to institute litigation holds in pending litigation constitutes sufficient culpable conduct to warrant sanctions, and such conduct equates to gross negligence.[5]  See, e.g., Crown Castle USA, 2010 WL 1286366 (W.D.N.Y. Mar. 31, 2010) at *11).  As noted by the Court in Crown, "'failure to implement a litigation hold at the outset of litigation amounts to gross negligence.'"  Crown, 2010 WL 1286366, at *10 (quoting Toussie v. Cnty. of Suffolk, No. 01-6716, 2007 WL 4565160, at *8 (E.D.N.Y. Dec. 21, 2007)).  Consequently, the Court finds that State National has met this factor and the County's failure to implement a litigation hold in this case is grossly

---

5.  The Court's finding as to the requisite culpability is limited to a spoliation inference, and as in Mosaid, "is not meant to infer that a lesser showing of culpability permits imposition of the far more serious sanctions-dismissal, summary judgment, and exclusion of evidence."  348 F. Supp. 2d at 338 n.11.  Moreover, in light of the Court's finding that gross negligence is the requisite culpability standard for evaluating whether to impose a spoliation inference, the Court does not assess, and makes no finding as to, whether the County's conduct in this case constituted bad faith or intentional misconduct.

negligent and sufficiently culpable to meet the second factor for imposition of the sanctions sought here.

With respect to the third factor -- whether the evidence that was destroyed or withheld was relevant to the claims or defenses -- the Court finds that State National has failed to meet its burden because it has not demonstrated that there are additional emails in existence which the County did not produce. State National contends that the allegedly destroyed evidence might have included, but is not limited to, email communications: (1) between Donna Whiteside and her supervisors at the Office of County Counsel; (2) between employees of the Office of County Counsel and County Administrators or Freeholders; and (3) between Donna Whiteside and Michael Brennan concerning the Anderson litigation. (See State National's Reply 12 n.4.)   In this regard, State National has enumerated the types of emails it asserts were deleted.  The County asserts, however, that State National has not presented any evidence that employees and attorneys within the Office of County Counsel regularly corresponded with each other by way of email, or that the attorneys in that Office regularly reviewed or discussed cases via email (see County's Opp'n 22-23), and points to relevant testimony in the case which reflects that County Counsel discussed the Anderson case with the county administrator in person. (Transcript [Doc. No. 370] 46:21-48:1, Nov. 5, 2010) (citing Ex. B [Doc. No. 299-2] Dep. of Michael Brennan, Esq. 122:20-123:4).

State National relies on Mosaid and TelQuest to support its position that it need not demonstrate that relevant information was deleted as a result of the litigation hold. However, in Mosaid and TelQuest, the moving party submitted affidavits in support of their applications. Specifically, in Mosaid, the Court relied upon an affidavit by a former employee of the non-moving party which testified "to the extensive use of e-mail within [the non-moving party's company] and the subject matter that [was] often times discussed in those e-mails." 348 F. Supp. 2d at 336. Similarly, in TelQuest, the Court considered the testimony of the party's forensic consultant who testified that certain business records were among documents discovered during the forensic analysis, and the testimony of one of the defendants that certain paper business records were discarded. 2009 WL 690996, at *5. Here, State National asserts that the existence of emails between Whiteside and her supervisors and between the County Counsel's Office and County administrators is "not only plausible, they are expected." (State National's Reply 12.)   State National also asserts, without citation to any record or testimony, that "virtually all of Whiteside's correspondence during the course of the Anderson case were via email." (Id.)  However, on the record submitted in connection with this motion, the Court concludes that this factor has not been met.  No sufficient affidavit or transcript of testimony has been submitted to support this factor.  In the absence of specific testimony or other evidence, such as

19

affidavits, that the types of email communications State National alleges are missing from the County's production existed, State National has not sufficiently demonstrated that the emails it asserts are missing existed.   See e.g., sanofi-aventis, 2010 WL 2652412 at *4 (court finding that based on record "[p]laintiffs' contention that any subsequent communication between [defendants' personnel] automatically occurred via email or was undeniably memorialized in some written communication is too speculative to support a claim for spoliation."   See also Point Blank Solutions, 2011 WL 1456029, at *21 (concluding that the party seeking spoliation sanctions bears the "burden to produce some evidence that the documents it alleges are missing actually existed at one time" because the court could not simply assume that the moving party's possession of certain emails which were not produced in discovery meant that additional emails must have existed and were similarly not produced).

Accordingly, the Court finds that the record developed to date is insufficient to permit a spoliation inference instruction in this case.   Therefore, State National's motion for a spoliation inference is denied without prejudice.   State National may renew its application at any trial in this matter if evidence of spoliation at trial warrants the Court giving an adverse inference.[6]

_____

6.  The Court makes no finding with respect to whether the claims or counterclaims will proceed past dispositive motion practice to trial, particularly since a number of dispositive motions have

With regard to State National's request for reasonable attorneys' fees and costs, the Court finds that the County's failure to institute a litigation hold, to disable its automatic email deletion program and to preserve copies of its backup tapes, warrants the imposition of reasonable attorneys' fees and costs associated with the time incurred by State National in assessing the scope of the County's email production.  In awarding attorneys' fees and costs, the Court notes that "[s]poliation sanctions serve a remedial function by leveling the playing field or restoring the prejudiced party to the position it would have been without spoliation.  They also serve a punitive function, by punishing the spoliator for its actions, and a deterrent function, by sending a clear message to other potential litigants that this type of behavior will not be tolerated and will be dealt with appropriately if need be."  Mosaid, 348 F. Supp. 2d at 335; see also Booker v. Mass. Dept. of Pub. Health, 612 F.3d 34, 46 (1st Cir. 2010) (recognizing that the spoliation inference is "based on prophylactic and punitive rationales: it serves to deter litigants from destroying relevant evidence prior to trial and to penalize a party whose misconduct creates the risk of an erroneous judgment.").  In this case, when a party fails to issue a litigation hold despite pending litigation and does not preserve emails of relevant custodians in breach of its duty, the adversary is forced to explore whether sanctions such as an adverse inference

_____

recently been denied without prejudice by the District Judge.

or more drastic sanctions - dismissal or suppression of evidence - are warranted.  To perform such an investigation requires the non-breaching party to expend attorney time, and in some cases, expert fees to determine the extent and scope of the deletion or destruction.  If, following such an investigation, there is no basis to award such spoliation sanctions or, as in this case, a court concludes that there is a failure to demonstrate that an adverse inference is warranted, the non-breaching party still has suffered damages in the context of attorneys' fees and costs. Consequently, in light of the failure to implement the litigation hold here, the Court finds that an award of reasonable attorneys' fees and costs incurred in connection with investigating the scope of the County's email deletion is appropriate in this case.  See, e.g., Medeva Pharma Suisse A.G. v. Roxane Labs., Inc., No. 07-5165, 2011 WL 310697, at *19 (D.N.J. Jan. 28, 2011); see generally Point Blank Solutions, 2011 WL 1456029, at *2, 31 n.24 (noting that courts have "awarded fees and costs to litigants while declining to issue an adverse inference instruction" where the culpable conduct at issue was gross negligence which "resulted in the loss of evidence at a time when the producing party was undeniably under a preservation duty to the moving party.").  In this regard, the Court will permit State National to submit an appropriate affidavit setting forth with specificity the reasonable attorneys' fees and expenses incurred, and explaining why such fees and expenses would not have been incurred but for the County's failure to preserve.

22

The County may file, by no later than August 1, 2011, a response on the issue of reasonableness of the fees and costs sets forth in the affidavit submitted by State National.

CONSEQUENTLY, for the reasons set forth above and for good cause shown:

IT IS on this 30th day of June 2011,

**ORDERED** that Plaintiff State National's motion for sanctions against the County of Camden [Doc. No. 299], shall be and is hereby, **DENIED IN PART** without prejudice to the extent State National seeks adverse inferences, and **GRANTED IN PART** to the extent State National seeks reasonable attorneys' fees and costs associated with the County's failure to institute a litigation hold and preserve email and backup tapes; and it is further

**ORDERED** that State National is granted leave to file by no later than July 20, 2011 an affidavit setting forth with specificity the reasonable attorneys' fees and expenses incurred, and explaining why such fees and expenses would not have been incurred but for the County's failure to preserve; and it is further

**ORDERED** that the County may file, by no later than August 1, 2011, a response to State National's affidavit.

s/ Ann Marie Donio
ANN MARIE DONIO
United States Magistrate Judge

cc:  Hon. Noel L. Hillman

23