UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STATE NATIONAL INSURANCE COMPANY,<br>    Plaintiff,<br>      v.<br><br>THE COUNTY OF CAMDEN,<br>     Defendant. | CIV. NO. 08-5128(NLH)(AMD)<br><br>OPINION |

**APPEARANCES:**

ROBERT J. MORROW
HUNTON & WILLIAMS LLP
200 PARK AVENUE
NEW YORK, NY 10166

WALTER J. ANDREWS
MICHAEL S. LEVINE
HUNTON & WILLIAMS LLP
1751 PINNACLE DRIVE
SUITE 1700
MCLEAN, VA 22102

On behalf of State National Insurance Company

WILLIAM M. TAMBUSSI
JOSEPH T. CARNEY
WILLIAM F. COOK
BROWN & CONNERY, LLP
360 HADDON AVENUE
P.O. BOX 539
WESTMONT, NJ 08108

On behalf of the County of Camden

**HILLMAN**, District Judge

    In October 2008, State National Insurance Company ("State National") filed a declaratory judgment action against the County of Camden, seeking a determination that it did not owe

coverage to the County under an excess liability insurance contract for a multi-million dollar state court jury verdict against the County.  State National contended that the County's delay in notifying it of the lawsuit, its repeated representation that the case was within the County's $300,000 self-insured retention, its errors in investigating and defending the case, and its revaluation of the case four days into trial, breached the insurance contract's notice provision and the adequate investigation and defense condition to coverage.  After six years of extensive litigation and motion practice before the Court, the claims between State National and the County were settled in October 2014.

In June 2009, State National amended its initial complaint to add legal malpractice claims against Donna Whiteside, in-house counsel for the County who handled the underlying state court case.  State National claimed that Whiteside committed legal malpractice by not properly defending the County and State National's interests.  In March 2010, and again in June 2010, the Court rejected State National's attempts to assert legal malpractice claims against Whiteside.  Despite the recent settlement of the claims between State National and the County, or perhaps because of, State National has again sought to renew

its legal malpractice claims against Whiteside.[1]

For a comprehensive explanation of the Court's prior decisions on the unviability of State National's legal malpractice claims against Whiteside, the Court will refer the parties to its two prior Opinions, Docket Numbers 226 and 272. Briefly summarized, the Court found that "no matter what Whiteside did, her conduct cannot be held to be the proximate cause of State National's . . . alleged damages." (Docket No. 226 at 10.) The Court recognized that the relationship between State National and the County was contract-based, and the breach of that contract was the basis for State National's declaratory judgment action against the County. The Court observed,

> If it is found that the County, by and through its lawyer employee, breached the insurance contract with State National . . ., [State National] will not be required to pay under the policy. Despite any alleged malpractice by Whiteside that [State National] wish[es] she atone for, it is the County, and not State National . . . , that has to pay for that negligence. The County accepted this potential outcome by conducting its own defense. Conversely, if it is found that the County, by and through its lawyer employee, did not breach the insurance contract, then there cannot be any malpractice upon which State National . . . can base a declination of coverage.

---

[1] State National has brought its motion pursuant to Federal Civil Procedure Rule 60(b)(6), which provides, "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for . . . (6) any other reason justifying relief from the operation of the judgment."

> [State National] attempt[s] to separate the County and Whiteside into two distinct and independent defendants.  The problem is that the County, as a non-person entity, obviously cannot act--its actions are those of its employees.  In other words, when [State National] contend[s] that the County breached its obligations under the insurance policy, it was Whiteside, and perhaps other County employees, who perpetrated that alleged breach.  It is the County--through Whiteside--that allegedly failed to conduct an adequate investigation or provide a proper defense.  Because the County and Whiteside are one-in-the-same, and [State National] had a contract with the County, [State National] cannot maintain separate and independent causes of action against Whiteside.

(Docket No. 226 at 11-12.)

In March 2014, this Court issued another Opinion addressing various legal issues, including the issue of the existence of disputed facts as to whether the County's defense of the state court litigation was "adequate" as required by the terms of the SIR endorsement to the insurance policy.  (See Docket No. 655 at 18.)  The Court found that it could not independently weigh the County's actions in its defense and investigation of the state court case to determine whether they were "adequate" under the SIR endorsement, particularly because the insurance contract did not define what an "adequate defense" entails.  (Id. at 22.)  The Court found that the determination of whether the defense was "adequate" was for the jury.  (Id.)  The Court also included this footnote:

4

> State National contends that the term "adequate" must be given its plain and ordinary meaning, which, according to Black's Law Dictionary, is "what is needed" and "of moderately good quality," and is "legally sufficient." State National further contends that the Court previously found that the County must prove more than that it did not commit legal malpractice in order to demonstrate its compliance with the "adequate defense" condition in the SIR endorsement. (State National Reply, Docket No. 613 at 6.) The Court did not make such a specific finding, and instead observed that the "adequate defense and investigation provision does not require the County to generally opine on the adequacy of its abilities to defend and investigate all law suits against it in order to meet the condition for coverage[;] the policy requires that the County demonstrate that in handling the Anderson lawsuit, it took certain steps and made certain decisions, and that conduct was 'adequate.'" The Court also noted, "even if the County can prove that its in-house counsel did not commit legal malpractice, it still must prove that its defense and investigation, although not considered malpractice, were adequate. Stated differently, the condition precedent still applies even if the elements of legal malpractice cannot be met." (Docket No. 474 at 8, 8 n.1.) What is an "adequate defense" as required by an insurance policy condition to coverage can be more burdensome than proving legal malpractice, or less burdensome, or the same. The Court did not decide that distinction, and, in denying State National's prior motion for summary judgment on the adequacy of the County's defense, the Court suggested that "in order to prove that the County's conduct was negligent such that it caused the breach of the insurance contract provisions, the aid of expert testimony is ordinarily required." (Docket No. 393 at 3 n.1.) The Court leaves it to the parties' proofs, expert or otherwise, to support their respective positions on what constitutes an "adequate defense" under the insurance policy endorsement.

(Id. at 22-23 n.11.)

In State National's current motion to revive its malpractice claims against Whiteside, State National argues that this footnote in the March 2014 Opinion altered the basis on which its malpractice claims were dismissed in March 2010, and created a potential for State National to incur damages caused by Whiteside's alleged malpractice.  When the Court noted, "What is an 'adequate defense' as required by an insurance policy condition to coverage can be more burdensome than proving legal malpractice, or less burdensome, or the same," State National interprets this observation as a "new" ruling that allows a claim for malpractice to be viable even if Whiteside provided an adequate defense.  State National argues that where, in March 2010, the Court found that "a finding of legal malpractice necessarily foreclosed a finding of an 'adequate' defense," the Court's March 2014 decision "creates a potential for a finding that Donna Whiteside did indeed commit legal malpractice while still implicating coverage under the Policy."  (Docket No. 663-1 at 13.)

The Court's footnote in the March 2014 did not create a "new" ruling as to State National's ability to lodge legal malpractice claims against Whiteside.  The footnote addressed State National's argument that the County must prove more than that it did not commit legal malpractice in order to demonstrate

6

its compliance with the "adequate defense" condition in the SIR endorsement.  In responding to that argument, the Court reaffirmed its statement in the body of the Opinion that it was for the jury to decide whether the County's defense was "adequate," and that the Court had never previously decided that issue itself.

Even though State National interprets the March 2010 decision to mean that the Court found that "a finding of legal malpractice necessarily foreclosed a finding of an 'adequate' defense," (State National Brief, Docket No. 663-1 at 12), the Court actually stated, "if it is found that the County, by and through its lawyer employee, did not breach the insurance contract, then there cannot be any malpractice upon which State National . . . can base a declination of coverage."  State National's inverse interpretation is contrary to the true meaning of the Court's observation, which the Court further clarified in the March 2014 Opinion.  There, the Court found that whether the County provided an "adequate defense" in the context of an insurance policy provision was for the jury to determine, and that the facts and expert testimony presented to the jury on the issue of a contractual "adequate defense" provision could also possibly support a legal malpractice claim was irrelevant and immaterial.  Reading the entire footnote

7

altogether in its proper context, along with the Court's other decisions, demonstrates that the Court has consistently viewed State National's putative legal malpractice claims against Whiteside as not viable.[2]

The general purpose of Rule 60(b) is "to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done."  Coltec Industries, Inc. v. Hobgood, 280 F.3d 262, 271 (3d Cir. 2002) (citation omitted).  More specifically, Rule 60(b)(6) is a

---

[2] State National states that the reason it is seeking to renew its claims against Whiteside is that the Court's March 2014 Opinion creates the potential for State National to face potential damages as a consequence of Whiteside's alleged malpractice.  Aside from the fact that the Court's March 2014 Opinion did not create a "new" ruling, it is unclear what potential damages State National now faces, particularly because the County and State National have settled their claims.  In supplemental briefing filed after the settlement, State National points out that it expressly exempted from the settlement its potential claims against Whiteside, and argues that its damages are legal fees as a result of her malpractice.  In response to State National's arguments, it is worth noting that a recent New Jersey Appellate Division case reaffirmed that "claims by non-clients against attorneys are permitted sparingly," and that there is a "high threshold in suits brought by non-clients against attorneys." O'Dowd v. Mandelbaum, 2014 WL 5482403, 7 (N.J. Super. Ct. App. Div. Oct. 31, 2014) (citing LoBiondo v. Schwartz, 970 A.2d 1007, 1029 (N.J. 2009)).  Regardless of that standard, however, the Court has not, and will not, alter the reasoning of the decision that dismissed State National's legal malpractice claims against Whiteside.  As the Court has stated before in this case, a difference of opinion with the Court's decision should be dealt with through the normal appellate process.  Florham Park Chevron, Inc. v. Chevron U.S.A., Inc., 680 F. Supp. 159, 162 (D.N.J. 1998).

catchall provision that "provides for extraordinary relief and may only be invoked upon a showing of exceptional circumstances." Id. (citations omitted). In its last effort to have Whiteside "left holding the proverbial bag," (Docket No. 226 at 11), State National has not demonstrated the exceptional circumstances necessary for the revival of its claims against Whiteside. It is time for this litigation to be brought to an end.

    An appropriate Order will be entered.


Date: November 26, 2014      s/ Noel L. Hillman
At Camden, New Jersey      NOEL L. HILLMAN, U.S.D.J.